MISSOURI PACIFIC R'Y CO. V. RUDOLPH WEISEN.

(Case No. 2194)

1. RAILROADS—COLLISION—TRESPASSER ON TRACK—NEGLIGENCE—PROXIMATE CAUSE—Although a person injured whilst walking upon the track of a railway company, by collision with a passing train of cars, may, at the time, have been wrongfully on the track, or, being rightly there, may have negligently remained upon it until too late to avoid the collision, nevertheless, if the company's servants managing the train discovered the danger to which such person's wrong or negligence was exposing him, in time to prevent the accident or at least to greatly lessen the injury, by the exercise of ordinary care and diligence on their part, but negligently failed to do so, the company is liable in damages. The negligence of the company in failing to stop or sufficiently slacken the train when the danger was discovered, and not the trespass or the negligence of the injured person, was the proximate cause of the injury. (Citing 1 Thomp. on Neg. 448, and S. & R. on Neg., sec. 25.)

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

This suit was instituted, in the district court of Galveston county,

by Rudolph Weisen against the Missouri Pacific Railway company, for damages for personal injuries resulting from a collision between the plaintiff and one of the company's train of cars, alleged to have been caused by the defendant's negligence. The petition laid the damages at $5,000.

The defendant pleaded not guilty and contributory negligence.

The cause was tried by the court, without a jury, and judgment was rendered in favor of plaintiff for $500. The defendant appealed.

The judge's conclusions of fact, which were filed at defendant's request, are, in substance, as follows: "In June, 1884, about two hundred yards inside the corporate limits of the city of Galveston, a train of cars belonging to the defendant, propelled by steam and moving at a speed of twenty or twenty-five miles an hour, collided with the plaintiff, who was, at the time, walking on defendant's railway track in the direction of the approaching train, knocking down and bruising him, by reason of which he lost consciousness for a few minutes, and was confined to his bed for several days, and to the hospital, at defendant's expense, for fifty-two days.

The defendant's cars were coming into the city on the usual schedule time, and at the usual rate of speed. Several other persons were, at the time of the collision, walking on defendant's track, each footman walking alone, a good many yards from each other; and it was the custom for persons to walk upon the track, because it was shelled and dry, and furnished better walking than the flat, wet prairie through which defendant's road runs, and furnished better walking than the public road, which was not shelled, was muddy when it rained, and was two or three hundred yards from the railroad track. The railroad track, at the point of collision, was elevated above the prairie from one foot to twenty inches, the embankment of the road-bed being made by dirt taken from each side of the track, and by putting cross-ties thereon, and then covering with a dressing of shell; the dirt taken from each side leaving a hollow ditch on each side of the road-bed, in which there was a little standing water.

Although the collision occurred at a point about two hundred yards within the corporate limits of the city, yet that part of the corporate limits had never been laid out into blocks or lots, or streets, and the defendant's road was enclosed with a lawful fence on its right of way, the fence on either side being about ten yards from the road-bed.

There were no houses anywhere near the point of collision, and, in fact, it was a mile from the point of collision to the nearest house in the city. The road was perfectly straight, and the nearest obstruction to the view of the train was outside the corporate limits and

about four hundred yards west of the point of collision, which obstruction consisted of cattle-pens, bone-yard and house. The point from where the cars first came into open view from around the cattle-pens and house to the point of collision with plaintiff was a little over four hundred yards, with no obstruction to the view of any sort, and a perfectly straight track. The plaintiff was walking on the road-bed towards and meeting the approaching train, which sounded its whistle in turning around the curve at the bone-yard, about five hundred yards distant from the point of collision.

The other footmen on the track, behind plaintiff, heard the whistle, but plaintiff testified that he did not hear it, but did hear the rumbling of the approaching train, as it was coming around the curve, or perhaps a little before it reached the curve ; but he states that he did not then get off the track, because he lived in that neighborhood, and was going home, and thought he could get off in time. He states that he did not see the train until it was about two hundred yards from him, and that it seemed to be coming at a tremendous speed—like a bird. He then started to get off the track, and had got both his feet clear, and that if he had had two seconds more he would have got his entire person out of the way.

The engine and tender passed the plaintiff without touching him, but the step on the baggage car, in rear of the tender, projected about four inches, and it was this projection of the step that came in collision with the body of plaintiff, and knocked him down, senseless, by the concussion, and bruised him, causing him much suffering and pain, after returning to consciousness. There were, on the engine, the engineer and another person, the lookout, both of whom saw the plaintiff, about four hundred yards distant, and the other persons approaching them on the track, but, as it was an every-day occurrence for persons to be walking on the track, they supposed the footmen would get off, as usual, and hence, rang the bell, but did not slacken the speed.

They did not suppose the persons walking on the track were in any danger until the engine got in about one hundred feet of the plaintiff, when they discovered the plaintiff was in danger of not getting off of the track in due time to avoid the collision, and instantly slowed up with the patent air brakes, but did not check up the cars as much as they then could have done, or would have done, if they had supposed the plaintiff would not have cleared the track. The train, by putting on the full force of the air brakes and reversing the engine, could have been stopped within about its length, which, including the locomotive, tender, baggage and passenger cars, was

about two hundred feet. The day was clear and the rails dry, and the collision occurred about sunset, or a trifle before.

Although the train could not have been entirely stopped within the hundred feet when the engineer and lookout first discovered the peril of plaintiff, yet its speed even then could have been so lessened as that the force with which it struck the plaintiff would have been less violent, and the plaintiff's bruises and pains less. When the engineer and lookout first discovered plaintiff he was about four hundred yards distant, and, supposing he would get out of the way, they took their eyes off him, and therefore did not see him again until the engine had got in about one hundred feet of him, when they saw he was in danger. At the time of the collision, the plaintiff was seventy-nine years of age, and his hearing and eye-sight were good, and he was enjoying the health and strength that persons of that age usually enjoy, and his locomotion was about such as is usual for a man of that age. The plaintiff was unknown to the engineer and lookout. They had never seen him before and knew nothing of his age, and, at the time, knew not but that he was as active as ordinary persons of middle age.

*Ballinger, Mott & Terry*, for appellant, that, under the facts, it was not the duty of the defendant to slacken the train, but that its servants in charge of the train had the right to act upon the presumption that the plaintiff would leave the track in time to avoid an accident, cited: H. & T. C. R'y Co. v. Smith, 52 Tex. 178; G. H. & S. A. R'y Co. v. Bracken, 59 Tex. 71; Hoover v. International R'y Co., 51 Tex. 503; I. & G. N. R'y Co. v. Smith, 62 Tex. 252.

On the question of contributory negligence, they cited: H. & T. C. R'y Co. v. Smith, 52 Tex. 178; G. H. & S. A. R'y Co. v. Bracken, 59 Tex. 71; Hoover v. International R'y Co., 51 Tex. 503.

*James B. Stubbs* and *M. E. Kleberg*, for appellee, that the negligence of the defendant, and not that of the plaintiff, was the proximate cause of the injury, cited: H. & T. C. R'y Co. v. Sympkins, 54 Tex. 615; H. T. C. R'y Co. v. Gorbett, 49 Tex. 581; T. & P. R'y Co. v. Lowrie, 61 Tex. 149; Frech v. P. W. & B. R'y Co., 39 Md. 574; Needham v. R'y Co., 39 Cal. 409; Wharton on Neg., secs. 388, 389; Thomp. on Neg., 443; Cooley on Torts, 675, 679; 6 Wait's Acts and Def., p. 584.

ROBERTSON, ASSOCIATE JUSTICE.—The court below found, as a fact, that after the servants of appellant discovered the danger to

which appellee's negligence exposed him, they negligently failed to use the means in their power to prevent or lessen the injury. The injury would not have happened if the appellee had not been on appellant's track at a time when he ought not have been there. Still, after it was discovered that he would not effect his escape from the track in time to avoid injury, it was the duty of appellant to prevent the result. It could have done this, or, at least, it could have given the appellee more time to get off the track than was given him; and if he then failed to get entirely out of danger, the violence of the concussion, upon which depended the extent and degree of his suffering, could have been softened. Appellee was seventy-nine years of age, and was making every effort in his power to get out of the way of the train, when the engineer saw, in time to prevent or greatly lessen the injury, that he would probably fail. Under such circumstances the appellant was properly held liable. Thompson on Neg., p. 448. The law would otherwise be accessory to the mutilation or murder of men. A man does not forfeit his life, or his right to remain whole, by going where he has no right to go, or being where he has no business. Neither appellee's trespass, nor his negligence, was the proximate cause of his injury, but the appellant's refusal, when the danger was seen, to stop or sufficiently slacken, the train. S. & R. on Neg., sec. 25.

We think the court below could *assume*, without the aid of testimony, that appellee would not have been so seriously injured if the train had been moving more slowly when it came in contact with him. But, in the absence of a statement of facts, we cannot say that the record sustains appellant's counsel in *assuming* that there was no testimony to this effect.

Nor is the period of three seconds necessarily too short a time to impose upon appellant a duty, and to require its performance. Instinctively and impulsively, a human agent, not negligent, would have done what was required to prevent the threatened injury. The court found, as a fact, in effect, that three seconds was time in which the engineer could comprehend the necessity of action and could act. Without a statement of facts, we cannot hold this finding wrong, merely because we know that three seconds is a very brief space.

We do not think there is any error disclosed, and the judgment is therefore affirmed.

                                                AFFIRMED.

[Opinion delivered February 9, 1886.]