# SECOND DISTRICT, 1895.

---

### Gulf, Colorado & Santa Fe Railway Company v. C. A. Lankford.

#### No. 1564.

1. **Railway Company—Negligence—Avoidable Consequences—Ordinary Care.**—Plaintiff was driving near the tracks of the defendant railway company, and his horses becoming unmanageable, were struck by a moving car. The employes in charge of the cars saw his danger, but made no effort to stop the cars. *Held*, the railway company was liable for the injuries resulting from the collision.

2. **Same—Contributory Negligence—Proximate Cause.**—The fact that plaintiff may have been guilty of contributory negligence in taking the more dangerous road (next to the tracks) will not relieve the company of liability, as it failed to exercise ordinary care after discovering plaintiff's danger to avoid the consequences, and such failure on its part was the proximate cause of the injury.

3. **Same—Liability in Such Cases.**—That the accident occurred on the company's track, to the exclusive use of which it was entitled, and at a point not a public crossing, and that the employes had a right to assume that plaintiff knew his own business, and would not drive along the track unless able to control his team, will not excuse their failure to use ordinary care to avert the disaster, after discovering the actual peril of plaintiffs.

4. **Evidence—Admission Mistakenly Made.**—Where plaintiff, immediately after the accident, and before he had learned that the train employes knew of his danger in time to have prevented injury, signed a written statement at the request of the employes exonerating them from blame, the jury were not required to give such statement a controlling effect over the other testimony in the case.

5. **Charge of Court—Negligence—Weight of Evidence.**—The court instructed, that under certain conditions the failure of the employes to stop the cars or to divert them from the track upon which they were running to a side track, would be negligence. The evidence showed that the negligence of the defendant company could consist only in the omission to perform one of those two acts. *Held*, that the rule forbidding the trial court to specify the acts or omissions which would constitute negligence, as being on the weight of evidence and giving undue prominence to the facts so mentioned, was not violated in this instance.

6. **Same—Special Instruction.**—Special charges are properly refused which ignore testimony showing the injury to be the result of negligence on the part of the defendant's employes.

Appeal from Cooke.　Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *Chas. K. Lee*, for appellant.

*Davis & Garnett*, for appellee.

A synopsis of the briefs of counsel appear in the further report of this case, in 88 Texas, 499.

TARLTON, CHIEF JUSTICE.—This appeal is from a judgment in the sum of $1000, recovered by the appellee from the appellant on April 29, 1893, as damages for personal injuries sustained by appellee's wife, and also for injuries inflicted at the same time upon a horse belonging to him. On the afternoon of September 16, 1892, the plaintiff, a resident of East Gainesville, in Cooke County, accompanied by his wife and child, and by Mr. and Mrs. Pitman, neighbors, left his home in a wagon drawn by two horses for a point in the country northwest of Gainesville. Broadway and Belcher streets course east and west through the town of Gainesville, the former about 250 feet north of the latter. Broadway street, 60 feet wide, intersects with the track of the appellant, which courses north and south. Ninety feet south of the south line of Broadway street, on the east side of appellant's track or right of way, is a coal box used by the appellant. At a point 17½ feet north of the north line of Broadway street two switch tracks of appellant leave its main track—one of them coursing obliquely northeast, and thence north, on a line parallel with the main track; the other coursing obliquely northwest, and thence north, on a line parallel with the main track. At a point 17½ feet north of the north line of Broadway street, and about the same distance west of the main track, is a switch stand, by means of a lever attached to which cars going north are diverted to either of the side tracks at will. This switch stand controls the three tracks—the main track and the two switch tracks.

An extensively traveled wagon road courses from the north line of Broadway street along the west side of the defendant's west switch track. This road is sufficiently wide to permit the use by two wagons side by side. Appellant's freight depot is west of the switch track, about 320 feet north of the north line of Broadway street. The road referred to, before reaching this depot, changes its course from the track, so as to run by the southwest corner of the defendant's freight depot platform, thence along the west side of the platform used for loading and unloading freight, and thence north to Belcher street. About 30 feet west of the switch stand, and about 50 feet west of the road above mentioned, another road courses north from Broadway street to the southwest corner of the freight depot platform, where the two roads connect.

As plaintiff drove his wagon across Broadway street, from east to west, one of appellant's locomotives, with three cars attached, was on the track south of the street. The locomotive was at the south end of the cars, the north end of the north car (a flat car) being at the coal box, 90 feet south of the street. Having crossed the track, the plaintiff turned his horses north on the road running along the west side of the switch track. When his team reached a point about 30 feet north of the street, it became unmanageable. The lines of one horse were

caught over the hames of the horse nearest the track, and in spite of diligent efforts by the plaintiff to control them, and to keep them in the road, the horses, rearing and plunging, dragged the wagon towards the track, and in immediate proximity thereto; and, at a point 256 feet north of Broadway street, the north car above mentioned, attached to two others, running north at the rate of about four miles an hour, overtook the off horse on the track, caught his right hind foot and his hip, crushing him down.

On account of the shock and jerk sustained by the wagon, the plaintiff's wife was thrown to the ground, and the horse was wounded and disabled, and the injuries for which this suit was brought were thus sustained. After the horses became unmanageable, the defendant's foreman in charge of the cars, who at the time saw the efforts of the plaintiff to control his team, gave the signal to the fireman upon the engine, whereupon the engine propelled the three cars northward, and, when they reached a point about 30 feet north of the switch stand, the foreman disconnected the engine from the cars, which were thus "kicked" northward until they overtook the wagon in the manner already indicated. At the time that the signal was given and the cars were disconnected the danger of the plaintiff was visible to the fireman, the switchman, and the foreman of the defendant. After the danger was thus discovered by the employes, the cars might, by ordinary effort, have been diverted, by means of the lever attached to the switch, to either of the remaining tracks. So also the cars were supplied with brakes, and after the dangerous position of the plaintiff was discovered, they might by reasonable effort have been stopped before the contact with the wagon, had any one of the three switchmen mounted a car and applied the brake. The horses manifested some fright before crossing Broadway street, and, had the plaintiff taken the more westerly road, the collision would have been avoided; so, had the lines not been caught over the hames, the plaintiff could have controlled the horses, and escaped the accident. The fact that the lines were so caught was neither known nor could have been known to the defendant's employes in charge of the train. The plaintiff, from his acquaintance with the movements of cars, knew that the operatives in charge of the cars were preparing to place them upon one of the switch tracks, but he did not know which track was contemplated.

About fifteen or twenty minutes after the accident the plaintiff, at the instance of the defendant's agent, signed the following statement: "As I, with my wife, Mr. and Mrs. Pitman, and my little girl, were crossing the Gulf, Colorado & Santa Fe track at Broadway street crossing, at 2:50 p. m. to-day, my horses became balky, and, the line becoming caught on the hames, I could not prevent the horses from backing the wagon on the track as three cars were being switched. Flat car G. C. 841 caught the off horse, and ran over his hind leg, cutting it badly. Did not break the leg; can't say just how badly the

horse was hurt. I do not think any of the party were hurt seriously. The ladies were badly frightened, and jumped from the wagon. I noticed the engine switching before I crossed. After I crossed, the engine pulled south, and come back north on the house track, catching me about half way between the passenger depot and the freight depot. The horses became uncontrollable, and the lines became caught on the hames, and I could not keep them off the track. I do not think they (the men in charge of the engine) were to blame for the accident, or could have prevented it." At the time the plaintiff signed this statement his wife was lying under a pecan tree a few yards distant from the place of the accident, and the plaintiff testified, that he "did not know that defendant's employes in charge of the cars had run the cars after him on the track after they saw and knew the peril and danger of himself and family;" that he had not talked with the operatives in charge of the train.

The verdict of the jury establishes the conclusion of fact, which we find, that, if the plaintiff was in the first instance guilty of contributory negligence in traveling the road by the defendant's track, the defendant's employes were guilty of negligence, after discovering the plaintiff's danger, in failing to use any effort to avert the collision and the consequent injury.

*Opinion.*—We dispose as follows of appellant's four assignments of error first urged, and complaining of the verdict of the jury as contrary to the evidence, on the grounds below indicated:

1. It was not necessary that the defendant's employes knew that the lines were caught in the hames to render defendant liable. It was sufficient that they were apprised of the perilous condition of the plaintiff, without reference to the specific cause of the danger, and that, after they were so apprised, they failed to use ordinary care to avert the consequences of the danger. Our conclusions of fact indicate our opinion that, after the danger was brought to their knowledge, the operatives of the cars might have prevented the collision, by diverting the cars to another track, or by stopping them by means of the brake attached to each of them.

2. So our conclusions of fact also indicate, that though the plaintiff might have been guilty of contributory negligence in taking the more dangerous road, under the circumstances, yet the verdict rests upon evidence showing the failure of the defendant's servants to exercise ordinary care, after the discovery of the danger, to avoid its consequences. Under such circumstances, liability attaches in spite of the prior contributory negligence by the plaintiff. The proximate cause of the injury is the negligence of the defendant. Railway v. Smith, 52 Texas, 178; Railway v. Weisen, 65 Texas, 443; Railway v. Hauks, 78 Texas, 300; Rozwadosfskie v. Railway, 1 Texas Civ. App., 493; Railway v. Robinson, 4 Texas Civ. App., 125.

3. The jury weighed as evidence the written statement of the plaintiff set out in our conclusions of fact, and purporting to exonerate the defendant's employes of blame.   We are not prepared to hold that they were required, under the circumstances surrounding its execution, to conclude that it should overcome the effect of the remaining testimony in the case.   Railway v. Ivy, 79 Texas, 444; Railway v. Fennell, 79 Texas, 448.   The fact that the accident occurred on the appellant's track, to the exclusive use of which it was entitled, and at a point not a public crossing, and the further fact that the employes had a right to assume that the plaintiff knew his own business, and would use ordinary care, and would not drive along the track unless he was able to control his team, would not excuse these employes in failing to use ordinary care to avert disaster, after the discovery by them of the actual peril surrounding the plaintiff.   The cases of our Supreme Court cited by appellant under these assignments (Hargis v. Railway, 75 Texas, 19; Artusy v. Railway, 73 Texas, 191; Railway v. Smith, 52 Texas, 178) in no way militate against the conclusion announced by us.   It does not appear in the case of Dooley v. Railway (Miss.), 12 Southern Reporter, 956, also cited by the appellant, that the danger was discovered before the contact with the trespasser; and if (as we do not, however, understand) it asserts the proposition, that after the discovery of the danger the company owes the trespasser no duty, except to abstain from willfully and wantonly injuring him, it states the law as it does not obtain in this State.   In Artusy v. Railway, 73 Texas, 195, our Supreme Court approves, as the "law dictated by reason as well as humanity," the proposition announced in Railway v. Weisen, 65 Texas, 443, that "after it was discovered that the appellee (negligently on the company's track) could not have effected his escape in time to avoid the danger, it was the duty of the appellant to prevent the result."

The court's general charge contains the following instruction:   "If you believe from the evidence that the plaintiff or his wife failed to exercise ordinary care, and that such failure contributed to the injury of plaintiff's wife, yet if you should find that before plaintiff's wife received her injuries, if she was injured, it became known to either of the agents or servants of the defendant who were engaged in operating said engines and cars that there was about to be a collision between said cars and the wagon in which plaintiff and his wife were riding, and if this became known to such agent or servant in time for him to have stopped said cars or to have diverted them from the track upon which they were running, and if he could have done so by the use of the means then at hand in time to have prevented said injuries, then you will find for the plaintiff; but unless you find from the evidence that such agent or servant knew, or by the exercise of ordinary care could have known, that there was about to be such a collision, and unless you find that he knew or could have known this in time to have

prevented said injury, and could have prevented it by the exercise of ordinary care, then you will find for the defendant.''

With reference to the above instruction, we hold, thus passing upon the matters of complaint urged against it by appellant: (1) The charge does not erroneously invade the province of the jury by the selection ''of certain specific acts, viz., to stop the cars or divert them from the track upon which they were running,'' the failure to perform either of which, under the conditions previously named, would be negligence. Under the status of the testimony, this instruction should not be deemed reprehensibly violative of the rule forbidding the trial judge to specify acts the omission to perform which would constitute negligence. Railway v. Lee, 70 Texas, 496; Railway v. Shearer, 1 Texas Civ. App., 352. Here the testimony does not present a variety of features indicating negligence, a selection of any one of which by the court would give it undue weight or emphasis. The negligence of the defendant's employes, after the discovery of danger, could consist only in the omission to perform one of two acts, viz., either to stop the cars, by the application of the brakes attached to each of them, or to divert them, by means of the engine, to one of the two remaining tracks. The charge calling the attention of the jury to the existence or nonexistence of one of these two conditions was directly applicable to the evidence, and seems to merit the commendation bestowed upon the charge in Hargis v. Railway, 75 Texas, 19, on account of its freedom from an indulgence in abstract propositions. The charge conformed to the allegations of the petition, and to the evidence in support thereof, showing negligence in the failure of the employes to stop the cars, or to divert them to another track. It was not upon the weight of the evidence. Railway v. Pettis, 69 Texas, 692. The testimony in this case on the issue of negligence did not present a tangled web of facts, in the unraveling of which by the jury, in the discharge of its peculiar function, a reference to any special feature by the court would have tended to give it prominence. (2) Under the facts found by us, there was no such error as will justify a reversal of this judgment in the concluding clause of the foregoing charge, wherein the defendant's employes were required to exercise ordinary care to discover that there was about to be a collision. It was seen that, at the time of the collision, the presence of the appellee's horses on the track, and his consequent perilous condition, were directly due to a cause over which the plaintiff had no control. Under such circumstances, it would seem that the duty devolved upon the defendant's employes to exert ordinary care to discover the danger; and if so, the charge, in the feature complained of, was literally correct. Where, between the act of contributory negligence (if such exist) and the accident, an intervening cause arises, placing the party on a railway track in a position of danger beyond his control, it would seem that liability attaches to the company, in the event not only that it actually discovers the peril, but in the event that it fails to exercise ordinary care to discover the

danger. It is beyond dispute in this case that the direct cause of the plaintiff's peril was beyond his control. Railway v. Roberts, 2 Texas Civ. App., 114, and authorities there cited.

We do not, however, find it necessary to decide whether this principle is applicable in this case, because the evidence, as we interpret it, discloses the fact that the defendant's operatives must be deemed to have actually discovered the perilous position of the appellee in time to have averted the danger by exercising ordinary care. Before the signal was given for the movement of the cars, and before the engine was disconnected from them, the employes (one or more of them) saw the fright of the horses, and the consequent probable danger to the appellee. Railway v. Carson, 66 Texas, 345; Railway v. Box, 81 Texas, 670.

The first, second, and fourth special instructions were properly refused, as they ignored that feature of the testimony from which the liability of defendant attached, as growing out of negligence on the part of defendant's servants after discovery of the danger. The fifth special instruction, to the effect that the jury would not consider the fact that the plaintiff's lines were fastened to the hames in determining the negligence vel non of the defendant's employes, was also properly refused. It would have been misleading, as it would have tended to divert the attention of the jury from considering the uncontrollable character of the condition in which the plaintiff was placed. Besides, if the danger was actually discovered, the question was not, what caused it? but simply, was it seen? The views suggested by this charge would have tended to obscure this issue, and to confuse the jury.

We order an affirmance of the judgment.

*Affirmed.*

Delivered February 5, 1895.

Writ of error granted by the Supreme Court, and judgment affirmed.