Gulf, Colorado & Santa Fe Railway Company v. Mrs. A. E. Hord et al.

Decided May 3, 1905.

**1.—Railroads—Engine Frightening Horse Near Track.**

Railroad companies are not called upon to keep a watch for people near the track in vehicles, although it be at or near a station or public crossing, and owe no duty to a person whose horse might become frightened unless its employes knew of the presence of such person, and caused the locomotive to emit unusual and unnecessary noises.

**2.—Same—Negligence—Fact Case.**

Evidence considered and held not to show negligence on the part of a railroad company, while switching cars, in frightening a horse near the track, it not appearing that its employes saw the horse or acted in other than the usual way in operating the engine and moving the cars.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.—Where the evidence fails to show, in a case of this character, that the accident was occasioned by reason of any unusual and unnecessary noises or escape of steam, or fails to show that such acts, if done, were the result of the negligence of the defendant company, then there can be no liability and the mere fact that the horse became frightened at noises from the engine or at the engine itself, or at steam emitted from the engine, is entirely insufficient to authorize recovery, and in this case there was an entire absence of negligence in each and all of the particulars specified.

*Stuart & Bell,* for appellees.—There is evidence in the record to the effect that H. C. Hord was in plain view of the engine operatives, and when said operatives were called to the stand by appellees, they failed to say they did not see him, although they acknowledged they were attending court as witnesses for appellant. There being evidence to the effect that H. C. Hord was in plain view of the operatives, the question was properly submitted by the court, especially since there was

no evidence in the record to the effect that the operatives did not see him. Railway Co. v. Bellew, 54 S. W. Rep., 1079, 62 S. W. Rep., 99; Railway Co. v. Scarborough, 58 S. W. Rep., 196; Railway Co. v. Traub, 47 S. W. Rep., 282; Brown v. Griffin, 71 Texas, 659; Sanchez v. Railway Co., 30 S. W. Rep., 141; Texas & P. Ry. Co. v. Ball, 75 S. W. Rep., 16.

FLY, ASSOCIATE JUSTICE.—This is a suit by appellees to recover damages resulting from the death of H. R. Hord, the husband of Mrs. A. E. Hord, and the father of the other appellees. It was alleged that the deceased was killed by his horse becoming frightened through appellant's negligence and running away with the buggy in which he was riding and throwing him out. The grounds of recovery were two, namely, first, causing an engine to make a loud and unusual noise and blow, pop and puff off steam, knowing that deceased was on the right of way; and, second, running an engine against cars standing on a spur and causing them to run together and make a loud and unnecessary noise, which caused the horse of deceased to run away and kill him.

The only testimony in any wise connecting the fright of the horse, and consequent runaway, with the engine of appellant was that of Mrs. Tennie Benge who lived northwest of appellant's depot and west of a mattress factory, about 100 yards from the railroad track. To understand her testimony it will be necessary to state that the mattress factory is nearly north of the freight depot, the latter being situated between the main track and a spur that runs out from the main track nearly south of the freight depot. The spur does not connect with the main line at the other end. Mrs. Benge swore that she saw Mr. Hord driving north from the freight depot towards the mattress factory. "Mr. Hord's horse became frightened and ran away and Mr. Hord was killed. An engine was north of the horse and was backing south on the track of the Gulf, Colorado & Santa Fe Railway. It was moving and going south, was making noise by the steam puffing and blowing off. The noise caused by the puffing and blowing off of steam could easily be heard where I was. The engine did not stop, but went on down the track. When Mr. Hord's horse became frightened he was sitting in his buggy and had hold of the lines. The horse seemed to be greatly frightened and became unmanageable, left the wagon way and ran west and jumped a ditch, throwing Mr. Hord from the seat of his buggy, and from there ran and struck the corner post of my fence, knocking him out of his buggy." The witness testified that the bell of the engine was not ringing and the whistle was not blown at the time, but that it seemed to her that the engine was making more noise than usual. The foregoing testimony was by deposition, and when the witness was introduced in person by appellant, she swore that the engine did not make any unusual noise. She also swore that Mr. Hord had control of the horse when she first saw him. She said: "From the time the horse started I saw him continuously until the accident. He was driving along like anybody else and the horse got scared."

J. R. Jordon presented a totally different state of facts in regard to the accident, although appellees endeavored to connect the two accounts and claim that they form consistent statements. Jordon swore that he

was at the freight depot at the time of the accident engaged in checking out a car of bacon and lard. The car was just west of the depot on the spur. The space between the spur and main track was used for a driveway to reach the cars on the spur, to load or unload them. He said he was notified by an employe of appellant that they intended to run a car in on the spur and he got out of the car he was in and got on the dray standing near. He stated that at that time he saw Mr. Hord sitting in a buggy just east of a car north of witness. The witness testified: "I saw Mr. Hord's horse as they set the car in. When they set the car in it caused the cars to run together. I think Mr. Hord's horse was asleep when they threw the car in. When the car was set in he went right up in the air and went to pitching around. The horse ran north, I said he jumped like a bronco, right up in the air, and there was some cars north of me, and I couldn't see him after he got to the end of the cars and cut west of me; I ran to the end of the cars where I could see around, and he had done thrown Mr. Hord out and I didn't go up there. . . . At the time this car was thrown in and at the time his horse jumped, Mr. Hord was sitting in the buggy with his feet over the side of the buggy seat talking to some one on the inside of the car." The witness testified that he heard no whistling from the time the horse started until Hord was thrown from the buggy. He saw the horse running four or five car lengths and Hord appeared to be trying to get hold of the lines which were tied to the whip, but did not think he ever got hold of them. He swore that the cars did not make any unusual noise when they came together. Cummins, a witness for appellees, swore that he saw the horse and buggy as they came around the end of the spur at the point they were seen last by Jordon; that the horse had just begun to run, and at that time Mr. Hord was climbing over the buggy seat. He did not have hold of the lines at that time. He also stated that Hord got hold of the lines just about the time that he got to the corner where he was thrown from the buggy. He did not remember any whistling. Ed Williams swore to substantially the same facts. Other witnesses swore that they heard shrill whistling about the time the accident happened. None of the witnesses sustains the evidence of Mrs. Benge, but on the other hand all the evidence tends to contradict her statement as to deceased having control of the horse.

However, let it be admitted that Mr. Hord was quietly driving along the road when a locomotive backed down the main track emitting steam and the horse became frightened and ran away, and a case of negligence was not made out against appellant on any theory that can be based on the testimony of Mrs. Benge. If it be that the horse had run around the spur as narrated by Jordon and the other eye witnesses, but had been quieted and gotten under perfect control, as stated by Mrs. Benge, there is no evidence tending to show that the employes saw him or knew that the horse had just been frightened, and if they had known those things the evidence failed to show that any unusual sounds were made by the locomotive at the time of the accident.

Taking up the theory arising from the evidence of Jordon, and we have the case of a man tying his lines to the whip standing in its case, and turning around and hanging his legs over the end of the seat and

engaging in a conversation in close proximity to cars near which a locomotive was at work, and negligence on the part of the railway company being claimed because notice was not given to him that a car would be run on the spur although no unusual noise was made by the car. It is true that it was shown that it was customary to give notice to those who were loading or unloading cars as to when cars would be run in on the spur, but deceased did not belong to either class. He was sitting in his buggy and seemingly indifferent as to his safety, his horse asleep, the reins down around the whip, his hands working with his hair and engaged in a conversation with some one on a car. He was not engaged in loading or unloading a car when his horse became frightened. It could not be anticipated that deceased would be guilty of the negligence that he was, and the railroad company could not be charged with notice of the peril arising from his negligence unless it had been shown that it had actual knowledge of his presence and had reason to anticipate that the horse would run.

Railroad companies are not called upon to keep a watch for people near its track, although it be at or near a public place such as a station or public crossing, and would owe no duty to any person whose horse might become frightened unless its employes knew of the presence of such person and caused the locomotive to emit unusual and unnecessary noises.

The law on this subject has been clearly expressed in the case of Hargis v. Railway, 75 Texas, 19, where it is said: "Upon this assignment it is impliedly assumed in the propositions in appellant's brief that the defendant was liable, although its employes did not know and did not have reason to believe that the noise would frighten the mules and that it was the duty of the company's servants to watch for teams near the track, and so to operate the engine as not to frighten them. We do not understand that the company or its servants owed to persons near its tracks any such duty. It was the duty of the company in running its trains to keep a lookout along its track so as not to injure persons who may be found thereon, at least at public crossings. But further than this, in our opinion the duty does not extend." The injury in that case took place at a point near appellant's depot where the injured person had a perfect right to be. There can be no doubt as stated in that case that if a team shows evidence of becoming frightened and the fact is made apparent to those operating the train, noises causing the fright should be suspended so far as can be done consistently with other duties, but no Appellate Court has gone so far as to hold that a railroad company will be negligent if by the exercise of ordinary care it could have seen a horse that afterwards became frightened and hurt some one. It is not the duty of a railway company to keep watch for people near its track in vehicles, and in case it be shown that such a person was seen it did not devolve on it to cease its work until such person should move on, or he had been informed that cars would be moved or steam emitted or the whistle sounded.

Speaking as to the rule in such cases, it was said by the Court of Civil Appeals of the Fifth District in the case of O'Dair v. Railway, 14 Texas Civ. App., 539, 38 S. W., 242: "It may be that if the opera-

tives in charge of an engine see a horse attached to a vehicle, near the track, becoming frightened from the noise of the engine, it would be negligence not to desist from making the noise; but in such a case it would be necessary to show that the operatives were apprised of the perilous situation before that duty would rest upon them." In the present case there is nothing to indicate that the employes knew that deceased was near the track or that the noises made by them were unusual or unnecessary. In most of the Texas cases on the subject the liability of the railway company, when horses are frightened and some one injured is made to hinge upon the knowledge of the employes in charge of the train that the horses were becoming frightened at noises made by the train and no effort was made to stop the noises. (Railway v. Box, 81 Texas, 670; Railway v. Carruth (Texas Civ. App.), 50 S. W. Rep., 1036; Railway v. Belt, 24 Texas Civ. App., 281, 59 S. W. Rep., 607; Railway v. Lankford, 9 Texas Civ. App., 593, 29 S. W. Rep., 933. A possible exception is the case of Railway v. Kennedy, 29 Texas Civ. App., 94, 69 S. W. Rep., 227; and in that case the horse was seen in close proximity to the track and there was an unnecessary emission of steam just as the locomotive reached the horse. In the present case deceased was not near the main track, but was off on a spur some distance from the main line.

The uncontradicted proof showed that the noise from the cars running together was not loud or unusual, and unless it was negligence in appellant in failing to give a man notice of its intention to perform its usual and necessary work, who was not engaged in business with the railway company, then the evidence fails to show negligence in connection with the moving of the car on the spur. It is true that witnesses stated that deceased went to the depot to put a stamp on a check, but he was not engaged in that work when the car was pushed on the spur.

None of the witnesses who swears to hearing whistling shows that it was done by appellant's engine, or that it had anything to do with the accident. Mrs. Hulen, who swore that she heard a shrill whistle about the time she heard the horse running, was one and a half blocks west from the main track. She swore that the whistle made no more noise than usual. She could not locate the whistle with reference to the freight depot. She was in the house at the time. Squire Higgins heard a wild whistling and thought there was a fire, but he was several blocks from the depot. That was about the time of the accident, but the witness did not see the accident and it was some time before he learned about it. Loring was several blocks from the scene of the accident and heard shrill whistling about 6 o'clock, p. m., which was near the time of the accident. He was with Higgins. Neither of these witnesses saw an engine. The mill whistle was shown by appellees to have been blown at or about the time of the accident. There was at least one other switch engine near the place of the accident. No one who saw the engine that it is claimed scared the horse, swore that it whistled, but on the other hand testified that it did not whistle, or make any loud or unnecessary noise. It was shown by appellees that the horse did not become frightened at engines. Jordon who was unloading a car when the car was moved in on the spur testified that notice was given to him

that a car would be moved in. It was the custom to give notice to those who were loading or unloading cars.

The evidence failing to prove negligence on the part of appellant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed by the Supreme Court for want of jurisdiction.