Adopted February 3, 1891.

---

MISSOURI PACIFIC RAILWAY COMPANY v. T. C. FENNELL.

No. 6792.

1. **Receipts Exacted by Railways.**—Fenner shipped horses from Frio County to Shreveport, Louisiana. On the route and at Shreveport he signed receipts stating that the horses were in good condition. It has been decided that such receipts and written statements when exacted amount to no more than an admission of the facts stated, and that they are not conclusive if untrue.

2. **Fact Case.**—See facts upon which a verdict and judgment for $65 for injury to two mares were sustained, there being conflict of testimony as to the injury and to the value of the animals.

APPEAL from Frio.     Tried below before Hon. D. P. Marr.

The opinion gives a statement.

*R. W. Hudson*, for appellant, cited Chandler v. Meckling, 22 Texas, 42; Willis v. Lewis, 28 Texas, 191; Harnage v. Berry, 43 Texas, 567; Zapp v. Michaelis, 58 Texas, 270; Thorn's Heirs v. Frazier's Heirs, 60 Texas, 259.

COLLARD, JUDGE.—Suit by appellee against appellant for $100 damages to two mares in a car of horses shipped over defendant's road. Defendant answered by general denial. The suit was brought in the Justice Court; judgment was there rendered for plaintiff for $100. Defendant appealed to the District Court, where there was judgment for plaintiff upon a verdict for $65, from which this appeal was taken. The items of the account were for damages to one mare by crippling her, and injury to the other mare from which she died, $50 for each item of damage, all resulting from the negligence of the company.

It was in evidence on the part of the plaintiff that he and one R. W. Smith left with the horses on the 5th of November, 1887, and arrived at Shreveport, Louisiana, the destination of the horses, about midnight on November 8th.

Smith testified for plaintiff that the next morning after reaching Shreveport they found one of plaintiff's mares badly snagged in her left shoulder. He says: "I pulled the snag out; it was about as wide as my two fingers and about twelve inches long; it hurt the mare badly and she could hardly walk; Fennell had to sell her for $10; she was a good animal, and was

worth in Shreveport without the injury $60. I looked at the chute when I found the mare injured and found it in a damaged condition; one of the planks was shattered and had splinters sticking out of the same. I saw hair on the plank, and the piece that I got out of the mare's shoulder was like the plank that had splinters on it. The horses were carried to McDonald's pasture, about one and a half miles from the stock yards. When we started there was another mare that could hardly walk, and I had to stay behind and drive this horse and the one that was hurt in the shoulder after the other horses. We stayed at McDonald's six or seven days. The mare that could hardly walk got worse, and died the second day after we got to the pasture; its sides were all bruised and bloodshot; bruised about like jelly. It was worth $50 without injury. When first unloaded I could not tell the extent of the damage to this one. Plaintiff is not here; he is in Arkansas, and did not testify on the trial in the Justice Court."

It was in proof that each of the mares without injury would have been worth on arrival in Shreveport $50 or $60, and were worth $35 or $40 each at Pearsall; that they were good animals and were in good condition when they left Pearsall. They were match iron grays.

The most of the foregoing evidence was disputed by the evidence offered by the defendant. It was proved that the horses were a "scrub lot;" that defendant's pens at Shreveport were in good condition, and that the chute was in good condition; that there was no splintered plank as stated by Smith; no mare wounded in the shoulder, and none bruised as testified by Smith.

Defendant read in evidence the bill of lading; also several statements in writing signed by plaintiff along the route to the effect that the horses were in good condition upon arrival at San Antonio, at Palestine, Longview, Marshall, and at Shreveport.

Defendant also read in evidence plaintiff's receipt for the horses at Shreveport, showing that they arrived there in good order and condition.

It has been decided that such receipts and written statements amount to no more than an admission of the facts stated, and that they are not conclusive of such facts if untrue. Railway v. Ivy, *ante,* 444.

Appellant's assignments of error are that "The court erred in overruling the motion for a new trial, because the verdict of the jury was not supported by and was contrary to the evidence, the defendant having proved by the written statements of plaintiff and his written receipt, besides the deposition of four witnesses, that the horses claimed to have been damaged were transported from Pearsall to Shreveport and were there delivered and received by the plaintiff in good condition and without damage;" and because "The testimony shows that the plaintiff sold in Shreveport the pick of his horses for $22.50, and that the market value of same did not exceed $18 per head. The evidence also shows that one of the

injured horses was sold for $10. The measure of damages was the value of the horses at Shreveport, which was $22.50, and the difference in the value of the injured horse at Shreveport before and after the injury. The value before being $22.50, and being sold for $10, the difference would be $12.50, total $35; therefore the verdict of $65 is not supported by the evidence, this being the highest possible price under the weight of the evidence."

We do not think these assignments of error are well taken. As before stated, the written statements of plaintiff are not binding upon him if they are untrue in fact, and the same may be said of the receipt signed by him at Shreveport.

Smith testified that defendant exacted of plaintiff the receipt, and refused to deliver the horses to him until it was signed. We can not say the evidence offered by plaintiff does not support the verdict in the conclusion that the mares were injured as charged while in defendant's care under the contract of shipment, nor can we say that the evidence fails to support the verdict as to the amount of damages awarded. The evidence of defendant does tend to show that the horses arrived at Shreveport in fair condition, and that the damages were excessive in that the mares were not of value sufficient, after deducting the amount received by plaintiff for the one said to have been snagged, to make the damages assessed.

But upon the evidence adduced by plaintiff the verdict of the jury approved by the trial judge a different conclusion was reached. If the evidence offered by plaintiff was true the verdict is correct. Whether or not it was true was peculiarly a question for the jury, whose determination of the matter was supervised by the court. The jury and the trial judge were in better positions to decide the question than the appellate court. It was their province to do so; and we do not think the verdict should be disturbed.

Our opinion is that the judgment of the court below should be affirmed.

*Affirmed.*