FELIX P. BATH v. HOUSTON & TEXAS CENTRAL RAILWAY
COMPANY ET AL.

Decided January 9, 1904.

1.—Statement of Facts—Affidavits in Aid of.

Affidavits of the attorneys in the case and the trial judge can not be considered in aid and explanation of the requisite approval of a statement. of facts,—such matters not having relation to the jurisdiction of the appellate court. Rev. Stats., art. 998.

2.—Same—Approval by Judge—Sufficiency—Disagreement of Counsel Not. Shown.

Where a statement of facts properly entitled, numbered and filed purported to give the testimony in the case and none other, and at the end of the testimony was indorsed "Approved," followed by the signature of the trial judge, but it was not signed by the attorneys, and the judge did not certify that they had not agreed upon a statement, or that they had disagreed and he had thereupon made out the statement, it will be presumed in favor of the regularity of official action that before he so approved the statement the attorneys had disagreed, and such approval is therefore held sufficient.

3.—Evidence—Condition of Freight.

Where it was an issue whether certain cotton, receipted for by a shipper as in good order, was injured by water before being received on the ship or afterwards, it was competent for the mate of the ship to testify that he remembered some cotton being wet when loaded, though he could not state positively it was the cotton in question, and to state further that as a general rule cotton was receipted for as being in good condition if it was apparently so, although he had testified that he did not know why the cotton was receipted for in good condition.

4.—Same—Comment on Weight of Evidence.

A remark made by the court in sustaining objections to the evidence of the mate, to the effect that the expressions "in good order" and "in good condition" meant substantially the same, was on the weight of the evidence.

5.—Same—Objections Going to Weight, Not Admissibility, of Evidence.

Objection that the witness failed to identify the cotton of which he spoke went to the weight of the testimony, and not to its competency.

6.—Same—Practice—Objection Below.

An objection to evidence not made on the trial at the time it was offered will not be considered on appeal.

7.—Same—Opinion.

It was not competent for a witness to testify that in his opinion the cotton was not in good order when received on the ship, as that was for the jury to determine. If there was error in excluding his opinion as to whether the wet condition of the cotton was due to salt water or to rain, the error was harmless where he testified as a fact that it was wet when received by the ship.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*Prewitt & Smith* and *A. M. Carter,* for appellant.

*Stanley, Spoonts & Thompson,* for appellees.

CONNER, CHIEF JUSTICE.—Suits were instituted by appellant against appellees severally for damage to cotton shipped from Ennis, Texas, to Galveston, Texas, and thence by vessel to Liverpool, England. The suits were consolidated and the trial resulted in a verdict and judgment for appellees, from which this appeal has been prosecuted.

We are met in the outset with an objection on the part of appellees to a consideration of the principal assignments of error on the ground that there is no statement of facts such as required by law contained in the record, and it will be necessary for us first to dispose of the question thus presented. There is what purports to be a statement of facts found in the transcript, but such statement is not signed by any attorney, and has immediately following its conclusion only the following indorsement on the part of the trial judge, viz: "Approved. Mike E. Smith, Judge." The statement appears to have been duly filed in the trial court, and the only objections thereto are that, "The purported statement of facts in the record is not signed by the attorneys for either party, and there is no certificate of the judge that the parties disagreed and that he prepared the statement of facts, or that the statement of facts was ever presented to the attorneys of either party; the only attestation being the word 'approved' following the statement of facts, with the name of the judge signed thereto, and the file marks of the clerk thereon."

Appellant has filed in this court affidavits of his counsel to the effect that a statement of facts had in truth been prepared by them and submitted to opposing counsel for agreement, as provided by the statute, and that such opposing counsel declined to agree to the statement as made, and that such statement was thereupon submitted to the judge, together with certain proposed changes desired by appellee's counsel, and that the judge thereupon adopted and approved the statement as found in the record. We have also the affidavit of the trial judge to the effect that he took the appellant's statement, together with corrections desired, as proposed by appellee's counsel, and therefrom, after correcting the same, adopted, approved and filed the statement in question.

We have no jurisdiction to consider the affidavits referred to in aid of the statement of facts, the question not being one relating to the jurisdiction of this court. Rev. Stats., art. 998; Boggess v. Harris, 90 Texas, 476; Willis & Bro. v. Smith, 90 Texas, 635. And we therefore must determine whether, as it appears in the transcript before us, the statement of facts in this case should be considered. In the case of Hess v. State, 30 Texas Crim. App., 477, 17 S. W. Rep., 1099, the Court of Criminal Appeals thus disposes of a similar question: "In the case before us the only authentication of the statement of facts is in these words: 'Approved. Geo. McCormick, Judge 25th Judicial District.' There is no signature of the attorneys to the statement of facts, and the judge does not certify that they had failed to agree, and that he, therefore, had made out the statement of facts. If the indorsement of the judge could be considered as a certificate that the above and foregoing was a statement of all the evidence in the case, then the presumption would be indulged, and should be indulged, that the parties could not agree, and that the judge had thereupon made out the statement of

facts," citing authorities. In the case of Renn v. Samos, 42 Texas, 110, our Supreme Court say, in declining to consider the purported statement of facts under consideration in that case: "It is not shown to be a statement of facts, either by agreement of counsel or certificate of the presiding judge. It is not stated, in its beginning or conclusion, that it is a statement of the facts proved on the trial. It is a mere recitation of what we may infer was testimony in the case. At the end of it is found the name of counsel for appellant, and on the opposite side of the page from his signature is written 'Approved,' underneath which is the signature of the judge before whom the case was tried."

While it is undoubtedly true that our statute (Rev. Stats., art. 1379), contemplates that there shall be a disagreement on the part of counsel in making up a statement of facts before the court is called upon to do so, yet neither the statute nor any case called to our attention requires such a disagreement of counsel to expressly appear from the statement itself, and we think it is to be implied from the decisions hereinbefore quoted, and also from the cases of Barnhart v. Clark, 59 Texas, 552, and Lacy v. Ash, 25 Texas, 384, that where it is to be fairly inferred from the entire statement under consideration that the facts and all of the facts proven upon the trial are contained therein, that there has been a failure of the respective attorneys to agree thereon, and that the statement has actually been approved and filed by the judge as a full statement of all of the facts, that the statement should be considered by the court. We are of opinion that, considering the statement before us in all of its parts, such is the condition in this case. It is properly entitled and numbered; its caption is as follows: "Be it remembered that upon the trial of the above entitled cause the following testimony was introduced and none other." Thereupon follows in regular sequence the testimony preceding the judge's signature as hereinbefore noted. It appears to have been properly filed in due time, and to have been approved and ordered filed by the trial judge, and we think that it is proper, under the circumstances, to indulge the usual presumption of the regularity of official acts, and to infer that before the judge so acted the counsel in fact had disagreed upon the statement. So concluding, we proceed to a disposition of the questions presented by the assignments of error.

Among other things appellant offered evidence tending to show that, when delivered to the initial carrier, the Houston & Texas Central Railway Company, the cotton was dry and in good order; that en route to Galveston it was so freely sprinkled or wet, inferentially to avoid danger from fire, as to cause the damage charged. On the other hand there was evidence that tended to show that the cotton, on its arrival at Galveston, was received and receipted for by the mate of the vessel as in "good order," and that the cotton, for several months prior to the shipment from Ennis, had been exposed to the elements, considerable evidence as to the amount of rainfall being offered. Appellant offered evidence to the effect that the cotton was securely stowed in the hold of

the vessel and not exposed to sea or other water on its way across the ocean, and that upon its arrival at Liverpool it was found in a badly damaged condition, several experts testifying that such damage was from fresh and not salt water. In this condition of the evidence appellant upon the trial offered the answer of Peter Forsyth, the mate of the vessel, to the third interrogatory in his deposition, which answer among other things contained the following statements: "I remember some cotton being wet when loaded, but could not state positively that it was this lot inquired about. * * * But, as a general rule cotton was receipted for as being in good condition if it was apparently so, or if it was not damaged too much." Appellees objected to this testimony and moved to strike it from the record, the grounds of objection and ruling being thus shown in the bill of exception: "(1) It was not competent for the witness to testify as to some cotton being wet, there being a great number of bales in the cargo besides the cotton in controversy, and the witness did not identify the wet cotton as that involved in this suit. (2) It was not competent for the witness, after having stated that he did not know why the cotton was receipted for in good condition by the shipper, to volunteer a statement as to the general rule in regard to receipting for cotton, the said statement being a volunteer statement, and not called for by the interrogatory, irrelevant and irresponsive thereto. (3) The receipts for said cotton by said witness and others as shown to the court, were all signed 'Received in good order,' and not in 'good condition,' and it was not therefore competent in any event for the witness to testify as to a general rule for receipting for cotton in 'good condition,' as the cotton in controversy was not thus receipted for. Counsel for plaintiff stated that the receipts proposed to be introduced by the defendant purported to show that the cotton was 'in 'good order,' and that he desired this answer to go to the jury to show that the cotton was receipted for in 'good condition,' as not contradistinguished from being in 'good order.' Counsel for defendant states that 'good order' and 'good condition' were not identical in their meaning, and the court made the folowing remark and ruling: 'I do not think the words have any commercial meaning. I think they mean what they say,' and sustained said objections and excluded said evidence."

We are of opinion that the court's ruling and remarks, to which error has been duly assigned, constitute prejudicial error for which the judgment must be reversed. It is well settled, and indeed appellees concede, that statements contained in receipts and bills of lading to the effect that the goods mentioned therein were received in "good order," or "good condition," are in the nature of mere admissions—mere written declarations—not conclusive or nonexplainable as against the party making them, much less as against one who did not, as is the case here. Hutch. on Carriers, sec. 125; Railway Co. v. Ivy, 79 Texas, 444, 15 S. W. Rep., 692; Railway Co. v. Fennell, 79 Texas, 448, 15 S. W. Rep., 693.

The bill of exceptions fails to show that the deposition in question

had been on file among the papers of the cause for at least one entire day prior to the trial, and we hence do not feel authorized to dispose of the objections urged on the ground that they go to the form and manner of taking the testimony and should therefore have been presented before the trial in formal motion to suppress the answer, but we think the objections without substantial merit, and the remarks of the court as in the nature of a comment on the weight of the testimony. As stated, the English receivers had testified that the cotton in question had been damaged by fresh water, i. e., country damage, as they term it. There was evidence also excluding the idea that it had been wet in the wharf houses in Galveston, or in transit across the ocean; also that it was in good order when originally delivered to the carrier, and we see no reason why it was incompetent to show that some of the cotton was wet, even though the answer of the witness failed to identify the particular cotton of which he spoke. This objection seems to go to the weight of the testimony, and not to its competency or admissibility. The answer seems susceptible of the construction that the cotton referred to was wet when received, to the best of the witness' recollection. But if not so, it constituted but one of the stages of progress in identifying the particular cotton to which the answer of the witness must have related. Appellant could have perhaps gone one step further in the identification by showing by the owners and receivers of the other shipments of cotton upon the same vessel that their cotton was undamaged, and thus have made the answer of the witness in effect positive in the matter of identity. The interrogatory was, among other things: "Do you know why it (the cotton) was receipted for in good condition by the shipper?" The answer of the witness as to the general rule in receipting for cotton seems responsive to this interrogatory, and the objection that the answer related to the "good condition" rather than to the words "good order," as occurring in the ship's bill of lading, we think too technical for serious consideration. We think it apparent from the whole record that the fact that the cotton was received and receipted for in good order by the steamship company was relied upon by appellees as a very cogent circumstance tending to show that the cotton had not been wet or damaged while in possession of the railway carriers, and it certainly seems material in behalf of appellant for him to show by a competent witness the precise force and effect to be given to the words quoted from the ship's bill of lading; and when to the exclusion of the explanation offered we add the force of the court's remarks, it seems at once apparent that appellant was prejudicially affected. The remarks of the court, while doubtless not so intended, may have been, and probably were, interpreted by the jury in whose presence they were made as meaning that, in the court's judgment, the words in the ship's bill of lading conclusively showed that the cotton when received on board the vessel was in good order.

Appellees, by counter-proposition, also urged the objection that the interrogatory related to receipts executed by the shipper, and not to re-

ceipts by the mate of the vessel referred to. No such objection, however, appears to have been offered to the evidence on the trial, which precludes its consideration now; besides, we think it entirely without merit, in that the word "shipped" as used in the interrogatory hereinbefore quoted is evidently a clerical error in the transcript, in substituting the word "shipped" for "ship," and the answer quoted, when considered with other parts thereof, makes it evident that the answer was intended to relate to the receipt executed by the officers of the ship, and no one else.

Numerous other assignments of error are presented, some of which we will briefly notice. The witness Willmont Reed, who testified by deposition, we think clearly qualified himself to express an opinion as to whether the injury to the cotton in question was occasioned from rain or salt water, but the court's exclusion of his testimony to this effect seems harmless, in that he testified that such was the case as matter of fact. The testimony of this witness, however, to the exclusion of which objection is made in the fifth assignment of error, to the effect that in his opinion the cotton in question could not have been in good order when received on the steamship, was properly excluded, in that the answer included the issue to be determined by the jury. For the reason last stated we also think that there was error in permitting the witness A. S. Morris to testify, over appellant's objection, that in his opinion it would damage cotton less if handled by a railway company for two or three days than it would for such cotton to be exposed for three months in open yards and on platforms and in fields.

The court's charge, together with special charges 1, 2 and 3, given at the request of appellees, when considered as a whole, seems subject to the objection urged in the ninth assignment of error, that undue prominence under the circumstances in evidence was given the provisions in the several bills of lading issued by the railway companies restricting liability to the railroad upon which the damage occurred; each of the charges referred to reiterating this feature of the appellee's defense. The omission pointed out in objection to the special charges numbers 2 and 3, because not signed by the court, is not likely to arise upon another trial.

As presented, no other question occurs to us as requiring notice, but for the error discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*