**HOUSTON & T. C. R. CO. v. PARIS MILLING CO.** (No. 2519.)

(Court of Civil Appeals of Texas. Texarkana. March 9, 1922.)

1. Estoppel ⊂⊃52—Doctrine applied merely to prevent injury to those who have been misled by false statements.

The doctrine of estoppel in pais is applied only for the purpose of preventing an injury to those who in the exercise of ordinary diligence to ascertain the truth have been misled by false statements; the question depending on the particular facts of each case.

2. Carriers ⊂⊃52(2) — Consignee who paid draft with bill of lading before arrival of goods held not entitled to recover on delivery of less goods than represented in bill.

Where buyer had knowledge of railroad's custom to sign bill of lading prepared in advance by shipper, without verification of the cor-

---

rectness of the weight of goods stated therein, and was entitled by contract of sale to examine the goods and verify the goods before payment of the price, and where the bill of lading stated that weights shown therein were "subject to correction," the buyer, having paid draft with bill of lading attached before arrival of goods at destination, could not recover from railroad the loss sustained on delivery of amount less than that stated in the bill of lading.

Appeal from Lamar County Court; W. L. Hutchison, Judge.

Action by the Paris Milling Company against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Jesse F. Holt and Head, Dillard, Smith, Maxey & Head, all of Sherman, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

Moore & Hardison, of Paris, for appellee.

HODGES, J. The appellee is a private corporation located at Paris, Tex. In July, 1920, it purchased through the agency of the Texas Grain & Brokerage Company of Fort Worth a carload of corn from the Thomas Grain Mill & Elevator Company of Waxahachie, Tex. The contract of purchase is evidenced by the following letter of confirmation written by the broker to the Thomas Grain Mill & Elevator Company July 21, 1920:

"We are pleased to confirm purchase from you to-day for account Paris Milling Company, Paris, Texas, as per phone wire your Mr. Thomas following:

" '1 (one) car number 3 White Corn at $1.60 per bushel; basis C A F Texas common points, on following terms: Destination weights, and destination grades, for shipment now loading, bill to Paris,' etc."

On July 23 the grain company at Waxahachie, in compliance with the above contract, loaded a car of shelled corn for shipment to Paris. The agents of the shipper filled out a blank shipper's order bill of lading, with instructions to notify the Paris Milling Company, in which the net weight of the corn was stated at 85,000 pounds, but for some reason the car had not been weighed. The bill of lading was presented to the appellant's agent, who signed it without verifying the weights. On the day following, and before the corn left Waxahachie, appellant's agent did weigh the car and found that it contained approximately 26,000 pounds less than the weight stated in the bill of lading. But no effort was made to notify any of the interested parties of the shortage. On July 22, the day the bill of lading was issued, the Thomas Grain Mill & Elevator Company drew its draft on the Paris Milling Company, payable on demand, for the sum of $2,265.60, that being the contract price of 85,000 pounds of shelled corn. To this draft the bill of lading was attached and forwarded through the mail to Paris for collection. The draft was presented to and paid by the appellee at Paris on July 28, two days before the arrival of the carload of corn. On July 30, when the corn did arrive, the car was weighed by the appellee and the shortage discovered. This suit was later instituted by the Paris Milling Company against the appellant, Houston & Texas Central Railroad Company, to recover the value of the shortage in the weight of the corn.

In the trial below the jury found that the railway company delivered to the appellee all of the corn received for shipment from the grain company at Waxahachie. The jury further found that the appellant did not use reasonable diligence in apprising the appellee of the actual weight of the corn prior to the payment of the draft. Upon those findings the trial court rendered a judgment in favor of the appellee.

The record presents a situation in which the terminal carrier has delivered, without loss or injury, all the freight it received for shipment, but a quantity less than that stated in the bill of lading. The liability of the carrier must therefore depend, not upon any breach of the contract of carriage, but upon the false statement of the quantity of the freight it undertook to transport. As has been frequently said, a bill of lading serves a twofold purpose—a receipt for the goods, and a contract to transport and deliver them. In a controversy between the carrier and the shipper, or one who had purchased the goods before shipment, the quantity stated in the bill of lading would be subject to correction. That would be the rule, even though the carrier's agents had done the weighing and the billing. But this is not a controversy between the carrier and the shipper, or one who owned the goods before delivery for shipment; but one between the carrier and another who purchased while the goods were in transit upon the faith of the carrier's receipt issued to the shipper. The contention is that the carrier should now be estopped to deny that it had received the quantity of corn stated in the bill of lading, because that statement had induced the purchaser to pay more than it otherwise would have paid for the car of corn.

[1] While the courts have differed about holding a carrier liable upon its bill of lading issued by its agents when no goods had been received for transportation, the weight of authority is against such liability. See Hutchinson on Carriers, § 160; Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Friedlander v. T. & P. Ry. Co., 130 U. S. 423, 9 Sup. Ct. 570, 32 L. Ed. 991; Cohen Bros. v. M., K. & T. Ry. Co., 44 Tex. Civ. App. 381, 98 S. W. 437; Bath v. H. & T. C. Ry. Co., 34 Tex. Civ. App. 234, 78 S. W. 993. The im-

munity accorded is justified upon the ground that the agent of the carrier has no authority to issue a bill of lading for goods not received for carriage, and therefore even an innocent purchaser cannot in such cases invoke the rule of estoppel. But in this instance the carrier's agent received the goods for shipment, and did have authority to issue a bill of lading therefor. He also had the right, and it was his duty, when he undertook to do so, to correctly state the quantity of goods received, subject to such qualifications as were proper to protect the carrier against the varying standards of measure and weight. Hence the basis of the rule in the cases above referred to being absent, the rule itself should not be applied in controversies of this character. There are decisions which hold that when the carrier issues a bill of lading in which the quantity of the goods is incorrectly stated the rule of estoppel in pais will be applied when necessary to protect an innocent purchaser for value who has relied upon the correctness of the terms of the bill of lading. Wichita Compress Co. v. Moody & Co. (Tex. Civ. App.) 154 S. W. 1032; Rall Grain Co. v. Mis. Pac. Ry. Co., 94 Kan. 446, 146 Pac. 1180, L. R. A. 1916C, 429; Thomas v. Atlantic Coast Line Ry. Co., 85 S. C. 537, 64 S. E. 220, 67 S. E. 908, 34 L. R. A. (N. S.) 1177, 21 Ann. Cas. 223; 4 Ruling Case Law, p. 27, and notes. The doctrine of estoppel in pais is an old one, and is applied only for the purpose of preventing an injury to those who, in the exercise of ordinary diligence to ascertain the truth, have been misled by false statements. In its very nature equitable estoppel must depend upon conditions which present an equitable claim for protection. There can be no inflexible rule for applying such a principle without impairing the usefulness of equity jurisprudence. It was the appeal of merit in particular cases, which the rigid rules of law could not relieve, that brought into existence this flexible system of administering justice. Hence the right to an equitable estoppel must depend upon the particular facts of each case as it is presented.

We come, then, to the question, was the appellee in this instance misled to its injury by relying upon anything which the appellant did in issuing this bill of lading? Let us assume that appellee did rely upon the recital as to the weight of the corn, when paying the full amount called for in the draft, but did it rely upon that recital as one emanating from the carrier? Claude Ferguson, the appellee's manager at Paris, testified as follows:

"We have been buying and selling corn about 15 years in the Texas markets. We know the general usages and customs of the trade. It is customary, in shipments of this kind, for the shipper to prepare the bill of lading. The railroads do not write it for them. The ship-per or elevator man writes them. The shipper usually prepares them—wrote them out. He takes them to the railroad agent and has them signed. The railroad most always takes the weight as given by the shipper—signs the bill of lading as prepared by the shipper. I knew this was the general custom when I paid the draft in this case. I knew it was the custom for the shipper to prepare the bill of lading; that the shipper was usually given a supply of blanks by the railroad for his use, and we are so supplied ourselves. I knew it was the custom of the Thomas Grain Mill & Elevator Company to take the bill of lading when they had prepared it to the railroad agent for him to sign, and that it was the custom in Texas for the railroad agents to take the shipper's statement as shown in the bill of lading for the weight of the corn, and I knew it was not customary for the railroad to question that and to weigh the corn before executing the bill of lading. It was not customary to do that."

If at the time Ferguson paid the draft he knew, or had good reason to believe, that the bill of lading had been prepared in advance by the agents of the shipper, that the recital as to the weight of the corn had been written there by the shipper's agents, and that the agent of the appellant signed the bill of lading without verifying the correctness of the weights therein stated, can it be said that the reliance was on the act of the railway company, and not on that of the shipper? The bill of lading also contained a provision, which negatived the inference that its recital as to weights was to be binding. At the top of the column, and below the word "Weights," was the following: "Subject to correction." It should also be borne in mind that by the terms of the written contract, previously quoted, weights at destination—that is, at Paris—were to control in the payment of the purchase price. Although the draft was payable on demand and was presented for payment two days before the arrival of the corn, the contract of purchase gave the appellee the right to delay payment till the weights at destination were ascertained. Payment prior to that time and without reweighing the car was purely voluntary, and cannot in fairness be made the basis of an estoppel.

Counsel for appellee refer to several cases to justify the estoppel claimed, among them is Wichita Falls Compress Co. v. W. L. Moody & Co., 154 S. W. 1032. In that case Justice Moursund of the Court of Civil Appeals at San Antonio uses language which tends to support that view of the law. In that case, however, the carrier seems to have been a party to a transaction in which the drawee of the draft was imposed upon in the shipment of a group of half bales of cotton when the bill of lading specified bales of cotton. In a later case, Baker v. Dittlinger Roller Mills Co. (Tex. Civ. App.) 203 S. W. 798, the same justice uses language which clearly shows he did not intend to go that

far. In the case last mentioned the suit against the railroad company was for the negligent loss of a part of a cargo of wheat while in transit. There was evidence tending to show that the railway company delivered all of the wheat which it had received from the shipper. The court said:

"However, if the carrier can show that it delivered all of the wheat received, and that at the destination it was carefully and correctly weighed, and there was found to be a discrepancy of 89 bushels, it has discharged the burden resting upon it, for it would follow that it could not have received the quantity stated in its bill of lading."

In M., K. & T. Ry. Co. v. Watson et al., 157 S. W. 438, Chief Justice Connor of the Court of Civil Appeals at Fort Worth uses similar language. He says:

"In view of the fact that the bill of lading attached to the draft and paid by the appellees contained a provision to the effect that the railway company would not be held liable for any fault of the shippers or discrepancy in weights, we would have no hesitation in supporting the view of the law presented by appellant [citing a number of cases]. The difficulty, however, is that we feel unable to say that the evidence is undisputed that but 45,900 pounds were originally delivered for shipment."

The judgment was affirmed upon the ground that the evidence did not require a finding that the railroad company delivered all of the cargo it received for shipment.

There does not appear to be in this case any inference of fraud against either the shipper or the railway company. The evidence indicates that the shortage was due to a mistake, resulting from a failure to weigh the corn by the shipper after it was loaded into the car.

[2] The finding of the jury that the appellant failed to exercise proper diligence to notify the appellee after the shortage was ascertained on the following day is urged as an additional reason for the estoppel. That failure is of no importance, if there was no culpable deception in the issuance of the bill of lading. The fact that the carrier later discovered the mistake did not relieve the appellee from the legal consequences of the notice it had of the conditions under which the bill of lading was probably issued, and of the failure to exercise its rights as purchaser to verify the weights at destination before payment of the price. With a contract allowing a verification of weights, as well as quality, before payment, the appellee cannot hold the carrier liable for the consequences of an injury which might have been evaded by requiring the seller to abide by the terms of its agreement.

We are of the opinion that the judgment should be reversed, and judgment here rendered for the appellant.