**HOLDEN v. KOGER et al.　(No. 1746.)**

(Court of Civil Appeals of Texas.　El Paso.
April 9, 1925.)

**1. Brokers ⬅86(4)—Evidence held to show
sale not effected by efforts of brokers inter-
vening in action for commission.**

In broker's action for commission for effect-
ing sale of realty, evidence *held* to show that
sale was not brought about by efforts of inter-
vening brokers.

**2. Brokers ⬅56(1)—Right to commission for
finding purchaser not affected by modification
of cash payment and terms of payment.**

Modifications in cash payment and terms
of deferred payments, as result of direct ne-
gotiation between owner and purchaser, did not
deprive broker of right to commission earned
by finding purchaser to whom sale was effected
at price quoted.

**3. Appeal and error ⬅1177(7)— Cause re-
manded on reversal of judgment for inter-
veners because of improper exclusion of parts
of deposition in plaintiff's behalf.**

On reversal of judgment for brokers, in-
tervening in action for commission as not sus-
tained by evidence, cause remanded, instead of
rendering judgment for plaintiff, because of
unsatisfactory evidence on controlling issue, as
result of improper exclusion of parts of pur-
chaser's deposition.

**4. Brokers ⬅87—No deduction of attorney
fee for defendant from agreed commission due
plaintiff.**

No deduction from agreed amount of com-
mission, to which evidence shows plaintiff en-
titled for effecting sale of land, can be made as
attorney fee for defendant, he not being stake-
holder, though other brokers claimed commis-
sion.

Appeal from District Court, Dawson Coun-
ty; Clark M. Mullican, Judge.

Action by I. H. Holden against C. C. Koger,
in which Hall & Grammar, partners, inter-
vened. From a judgment for interveners,
plaintiff appeals. Reversed and remanded.

A. L. Brantley, of Lamesa, for appellant.
C. P. Rogers and Garland & McGuire, all
of Lamesa, and J. E. Brown, of Wellington,
for appellees.

HIGGINS, J.　Holden sued Koger to re-
cover a commission alleged to have been
earned for effecting the sale to J. E. White-
side of a section of land in Dawson county
owned by Koger. Hall & Grammar, engaged
in the real estate business as partners, in-
tervened in the suit, claiming that they
were entitled to the commission. For con-
venience the parties will be hereinafter re-
ferred to as plaintiff, defendant, and inter-
veners. An instructed verdict was returned
in favor of the interveners. The only issue
in the case is whether the efforts of the
plaintiff or interveners were the procuring
cause of the sale.

Appellees move to strike out the state-
ment of facts. This is without merit, and is
overruled for the reasons stated and upon
the authorities cited in McGlasson v. Fior-
ella (Tex. Civ. App.) 228 S. W. 254, and Bath
v. Ry. Co., 34 Tex. Civ. App. 234, 78 S. W.
993.

In the fall of 1923 defendant listed the
land for sale with the plaintiff authorizing
a sale at $25 per acre; one-fourth to be paid
in cash, the purchaser to assume a balance
of $1.50 per acre due the state, the balance
upon time.

Plaintiff lived at Sparenburg, near La-
mesa, Tex. Defendant and interveners lived
in Lamesa. The land sold was near the
last-named place. The purchaser, White-
side, lived in Brown county. In the latter
part of November, or shortly thereafter, the
purchaser met the plaintiff at the latter's
home. Whiteside was seeking to purchase
land, and was accompanied by his son, Murl
Whiteside, and son-in-law, G. R. Bivins.
The plaintiff showed the parties several
tracts of land, including defendant's. The
purchaser then inspected other land in Lynn
county, and returned to his home. In Jan-
uary, 1924, he sent his son and son-in-law
back to Lamesa to see the plaintiff and de-
fendant about purchasing the latter's land.
They came first to Holden, and with him
went to Lamesa to see defendant. The lat-
ter was out upon his ranch, and they failed
to see him. The son and son-in-law then
made another inspection of the land, and
went to Stanton in Martin county. They
there phoned J. E. Whiteside to join them
and go to Lamesa to purchase the land.
J. E. Whiteside joined his son and son-in-law
and they all drove to Lamesa. Upon ar-
rival in Lamesa, and according to the tes-
timony of the two Whitesides and Bivins,
they stopped their car near the office of in-
terveners. Being cold, and observing a fire
in the office, J. E. Whiteside entered to warm
himself. Up to this time they had never
met the defendant or interveners. What
then occurred is thus stated by J. E. White-
side:

"As heretofore stated, I went into the office
of Hall & Grammar to warm after my long
trip to Lamesa; and shortly after I went in
Mr. Hall commenced to ask me questions and
ascertain if I was interested in purchasing
land in that section. I told him that that was
my business there at the time—to purchase some
land. He then began to tell me about certain
land that he had listed, and while he was talk-
ing to me Mr. C. C. Koger was passing along
the street, and he told me, 'There goes the
man who owns the land.' and he called Mr.
Koger in, and introduced him to me, and sug-
gested that Mr. Koger could tell me all about
the land. After Mr. Koger had described the
land to me, and particularly how thick the mes-
quites were on the northeast corner of the
section, I told him that I was on that land
last fall, and that Mr. I. H. Holden had showed

it to me. Mr. Hall was present at the time in the office, and I am sure that he heard part or all of this conversation. Mr. Koger and I then went over and sat down, and I commenced to work on him to reduce the cash payment required for the land. After we had talked some time, Mr. Hall intercepted by asking Mr. Koger what was the least cash payment he would take on the land; and Mr. Koger hesitated, and finally suggested that he would take $2 per acre cash payment down. In the meantime my son and my son-in-law, heretofore mentioned, came in; and I then asked him if he would not be willing to take $1,000 cash payment, and he finally suggested that the boys looked rather husky, and that he would agree to take the $1,000 as an initial, or cash, payment. The first time I saw Mr. Holden he told me that Mr. O. C. Koger owned the land; that he lived in Lamesa; and he also told me the price of the land, though I did not work out in detail the terms of the payment."

As the result of the conference testified to J. E. Whiteside agreed to purchase the land for $25 per acre, pay $1,000 in cash, assume the balance due the state, and give purchase-money notes for the balance. A contract to that effect was made subject to examination of title, which contract shortly thereafter was consummated.

[1-3] The evidence plainly shows that the relationship of the interveners to the sale was purely accidental and casual, and that their efforts did not bring about the sale. They merely called in the office the owner whom the purchaser was seeking, and introduced the parties. The sale was effected at the price the plaintiff had priced the land to the purchaser, and the only modification was in the cash payment and the terms of the deferred payments. These modifications were the result of the direct negotiation between the owner and purchaser, and did not deprive the plaintiff of his right to recover the commission which he had earned by finding the purchaser finally accepted by the owner. This case is in no material respect different from Keener v. Cleveland, 250 S. W. 151, by the Commission of Appeals. Indeed, under the authority of that case we would perhaps be authorized to reverse and here render in favor of appellant but we conclude it is better to remand. The evidence upon the controlling issue is perhaps not as satisfactory as it should be in view of the exclusion by the court of certain portions of the deposition of the purchaser who testified in behalf of the plaintiff. The excluded evidence was admissible for the purpose of showing that the efforts of the plaintiff were the sole procuring cause of the sale. The objections made to the testimony were not well taken, and all of the excluded portions of the purchaser's deposition as shown by the bills of exception should have been admitted. For the error in the exclusion of

this evidence and in giving the peremptory instruction the judgment is reversed.

[4] The court by its judgment deducted from the amount awarded interveners the sum of $50, which was allowed the defendant as an attorney's fee. Upon the facts reflected by the record the defendant was clearly liable to the plaintiff for the commission agreed to be paid. He is in no sense a stakeholder. Upon the authority of the case last cited no deduction can be made from the amount due as an attorney fee for the defendant.

None of the other assignments present any error.

Reversed and remanded.