The prisoner was indicted with two other for the murder of Willie Carter. The facts and the evidence are contained in the 628) following statement of the presiding Judge, sent to this Court as part of the record.
 THE CONFESSIONS OF DAVID MARTIN, MADE TO JESSE J. CASSADY, THE EXAMINING MAGISTRATE.
He says: Between the hours of 1 and 2 o'clock, on Monday last, I and Jimmie Anderson and William Hooper, and Willie Carter, the deceased, started for Smith's Creek, to go in swimming, and when about half way between the Union Depot and the creek, we sat down on the railroad track. While sitting on the track, Jimmie Anderson took out of his pocket a two-bladed corkscrew knife, which had the point of one blade broken off. Stopped and sharpened the knife on the iron rail, remarking that he always wanted his knife sharp, so that he could cut anybody that aroused his angry passions. After sharpening the knife, the boys got up and proceeded to the creek, and when near the thicket, one of them cut a club about fifteen inches long and one and a half-inches in diameter, which he carried along.
Arriving at the place where they intended to go in swimming, they found it unsuitable to the purpose; so they went farther up the creek, *Page 507 
through a blind path, and through an undergrowth, to a spot where they would have a better opportunity of committing the deed without the fear of discovery while in the act.
While Carter and one of the boys stripped off and plunged (629) into the water; Jimmie threw Willie's hat into the water, which he, (Willie,) swam after and secured. They next threw his clothes in, which he also swam after, and in attempting to get ashore, was jumped on and repeatedly shoved under, until he was nearly drowned, and when he reached the shore, was pulled on the bank by him (David.) Willie spread his clothes in the sun, and while waiting for them to dry, Jimmie Anderson, with knife in hand, made an assault upon Willie and attempted to cut him. Willie resisted, and finally threw the boys off, remarking as he did so, that he did not like such fun. In a few minutes thereafter one of them struck him with a club in the forehead, which stunned him, and he staggered towards the bank of the creek, and Jimmie and William shoved him in the water. They then tied the legs of his pants, which they filled with rocks, and threw over his neck. The boys then sat on the bank of the creek (with the exception of David, who lay on the hill out of sight) and watched the boy fifteen minutes, until the last bubbles were seen to rise.
Dr. W. W. Lane, being duly sworn, deposes and says:
I was called on to make a post mortem examination of Willie Carter; found the head in a contused condition, the tongue hanging out of the mouth, terribly lacerated. I found the arm off close to the shoulder, with about two inches of the humeries and head in the socket. Arm was missing. Was forty or fifty hours between death and the time of examination. The body was mutilated by a smooth clean cut, and must have been made with a knife. There was a small gash, a diagonal cut on the thigh. The whole head and face was severely bruised, evidently by a dull instrument. I did not cut into the skull, as the evidence of foul play was so evident. Made no examination to see if deceased was drowned. The body had the appearances of being choked, and the head bruised. The left arm was removed; the bone was broken, and an irregular fracture.
Upon his cross-examination, Dr. Lane said: I would not like (630) to say whether the boy was drowned or murdered first. I did not make a careful examination. My opinion is he was drowned first;
though he might have been beaten and drowned simultaneously.
There was much evidence tending to show the guilty participation of the boy David in the homicide, which it is not deemed necessary to *Page 508 
report. But all the evidence as to the means and manner of the homicide is herein stated.
Oliver Kelly, was sworn as a witness, and testified as to the confessions of the prisoner, David; to the effect that David stated that he went into the water with the deceased, and that he pushed Willie under the water until he was nearly dead. That he and one Elijah Martin held his arm while one Duke cut it off with a hatchet. David also said that he himself held Willie's head under the water until he was nearly strangled. David also said that Jimmie Anderson struck him with a stick, they having got into a fight about a biscuit. In another statement made by David Martin, he said the body of Willie Carter was not mutilated until after his death, and the body had been drawn up out of the water, after his death. He also stated, when examined by the Justice, that Willie was standing on the bank close to the river, facing the water, when the boys, Jim Anderson and Billy Merrick, shoved him in the creek and drowned him.
It was also in evidence that in a statement subsequent to those above given, David stated that Elijah, whom he had implicated by his previous statements, was not present at all, had nothing to do with it, and upon being asked why he had charged Elizah with it, said he did not know why he did it, that he just lied about it. And several witnesses testified to an alibi as to Duke, who had been implicated by the statement of the prisoner, David. In some of David's statements which were in evidence, he described the place where the homicide was done, and his description was confirmed by numerous witnesses who examined the place.
(631) In the course of the trial, the boys, David, Jim and Billy Merrick, being at the bar, on trial, when the State rested it case, the counsel for the prisoner, Billy Merrick, moved that the Court direct a verdict of not guilty, as to him, and that he be discharged upon the ground that there was no evidence against him to go to the jury. The Court said that there was nothing whatever in the State's case showing the guilt of the prisoner, Billy Merrick, except the confessions of his co-defendants, which were not evidence against him. "Therefore," said the Judge, "I shall direct an acquittal as to him, although I think it not improbable that he was there." To this remark of the Court, the prisoner, David, excepts. The remark was made as to Billy. Counsel for prisoners argued to the jury, that according to the evidence, the homicide, if committed at all by the prisoners, (which was denied) was upon a sudden fight, and, therefore, manslaughter.
This argument that was made to the jury, "That if the defendants *Page 509 
were guilty at all, they were only guilty of manslaughter, was based upon the confessions that were made by Jimmie Anderson, which showed a certain fight, which resulted in the death of the deceased, and not from any confessions or statements that were made by David Martin."
The Court charged the jury, that if the deceased came to his death by a blow with the stick or by other means occurring upon a sudden quarrel, and in a sudden fight, which deceased had contributed to bring about, then it would be manslaughter, and not murder; but that if the jury believed that the killing was accompanied by the circumstances of teasing and tantalizing the deceased, and then mutilating the body in the atrocious manner described by witnesses, that this would indicate the existence of malice. Prisoner prayed the Court to instruct, that if deceased came to his death by being drowned, then the prisoners cannot be convicted. In response to which the Court charged, that it was true the bill of indictment did not charge a drowning, and that the law required the prosecution to establish the death by the same or like means as those charged in the bill. And, therefore, if they (632) believed the death was from drowning, the variance would be fatal, but that it was for them to say how deceased was killed. That there was evidence of blows, stricken by a stick, and of a fight between the boys; that the doctor had stated that he could not tell whether deceased was drowned or killed and then thrown in the water; that the severe bruises, found on the body, the doctor thought might have been put there before submersion in the water, though he expressed the opinion that he was strangled by water, or, in other words, drowned; that it was submitted to them to say whether the death was by drowning, "in which case prisoners were entitled to a verdict," or by bruises from the striking, pushing and kicking, as charged in the bill, or by bruises caused by beating, scuffling or holding under the water, or by both or all of these means, or by blows with a stick, in either of which cases there would be no variance sufficient to defeat the indictment.
The prisoner was found guilty. Judgment of death, and appeal.
The prisoner, David Martin, with one Jim Anderson and Bill Merrick, was on trial for the murder of one Willie Carter. After the evidence for the State was closed, the counsel of Merrick moved the Court to direct a verdict of not guilty to be entered as to him, upon the ground that there was no evidence against him to go to *Page 510 
the jury. The Court remarked that there was nothing in the State's case showing the guilt of the prisoner Merrick, except the confessions of his co-defendants, which were not evidence against him. "Therefore," said the Judge, "I shall direct an acquittal as to him, although I think it not improbable that he was there." This was excepted to by the counsel of the defendant, Martin. It is not seen how (633) Martin could be prejudiced by the remark of his Honor, that Merrick was probably there, meaning at the place of the homicide, for the remark conveyed no opinion of the Court to the jury of Martin's guilt. It was fully proved and not denied in the argument, that Martin was present at the time and place of the homicide, and his defence was rested, not upon an alibi, but upon the ground, first, that he did not commit the deed, and second, if he did, that it was not murder, but only manslaughter. So, even to put the most unfavorable construction upon the remark of the Judge, as intimating an opinion that not only Merrick, but Martin, also, was there, it would be only affirming what the prisoner himself admitted, and did not deny.
This was the only exception. The Court gave the prisoner the benefit of the instructions asked, to-wit; that if the deceased came to his death by drowning, the jury must acquit, because the indictment contained no count for killing by drowning, and to convict, the jury must be satisfied that the deceased came to his death in one of the modes of described and charged in the indictment.
We have carefully examined the whole record and find no error.
PER CURIAM. Judgment affirmed.
S. v. Hunter, 94 N.C. 835; S. v. Bryant, 236 N.C. 747.