THE SAINT LOUIS, ARKANSAS & TEXAS RAILWAY COMPANY v. J. P. HAUKS.

No. 2766.

1. **Negligent Killing of a Dog by Railway.**—The plaintiff was hunting, and passing along the side of a railway track his dog becoming frightened by an approaching train tried to escape by flight, running upon the track. The train ran upon and killed the dog. It could have been seen from the train upon the track. *Held:* Concede that the plaintiff was a trespasser and guilty of negligence in going upon the track with his dog, that fact would not relieve the railway company of the exercise of ordinary prudence and care to prevent injury to the dog. Under such facts it would seem that upon the plainest principles of reason if the railway employes by using ordinary care could have prevented the injury, and failed to use it, causing thereby the injury and damage, the plaintiff should recover the value of the dog.

2. **Willful Injury.**—See facts which would sustain a verdict for willfully killing the dog of the plaintiff.

APPEAL from Henderson. Tried below before Hon. F. A. Williams. The opinion states the facts.

*Clark, Bolinger & Dyer,* for appellant.— 1. The statutes of this State do not require railway companies to fence their tracks against such ani-

mals as dogs, and appellee in this case having voluntarily carried his dog on appellant's railway track, where it was a trespasser and so continued to be up to the time it was killed, would not be entitled to recover damages for loss of said dog unless such killing was caused by the willfulness or gross negligence of defendant, its servants or agents. Oil Co. v. Morton, 70 Texas, 400; Railway v. Patchin, 16 Ill., 197; Railway v. Skinner, 19 Pa. St., 302; Railway v. Rehman, 49 Pa. St., 106; Drake v. Railway, 51 Pa. St., 242; Hughes v. Railway, 66 Mo., 325; Railway v. Carraher, 47 Ill., 333; Darling v. Railway, 121 Mass., 118; Price v. Railway, 3 Vroom, 19; Fisher v. Trust Co., 21 Wis., 74; Stucke v. Railway, 9 Wis., 202; Munch v. Railway, 29 Barb., 647; Hance v. Railway, 26 N. Y., 428; Knight v. Abert, 47 Am. Dec., 478.

2. At the time said dog was killed appellant was in the lawful discharge of its duties to the public as a common carrier, and was in the lawful use of its own property and had no time to stop its train for a dog to get out of the way under the orders governing this train; and the charge of the court making it incumbent on appellant to stop its train if necessary to prevent the killing of a trespassing dog is too onerous on appellant, because it disregards the exigencies of the situation as to the movements of appellant's train, it being pressed for time, and makes the rights of a railway company in the use of its own property inferior and subordinate to the rights of a dog unlawfully on its track, and undertakes to regulate the movements of a railway train according to the unaccountable freaks of a frightened dog.

3. The court erred in refusing a new trial, for the reason that the verdict of the jury was contrary to the law and the evidence, in that the evidence showed that the plaintiff and his dog were trespassers on defendant's track without any business and at a place where they had no right to be, and for this reason, although defendant may have been negligent, still it would not have been liable except for an intentional or willful killing of said dog, and the verdict of the jury shows that their finding was based solely on the negligent killing of the dog, and that defendant did not willfully kill said dog. Oil Co. v. Morton, 70 Texas, 400; Railway v. Richards, 59 Texas, 377; McLaren v. Railway, 8 Am. and Eng. Ry. Cases, 217.

*W. R. Dickerson* and *Falk & Falk,* for appellee.— 1. If there is a trespasser upon the track of a railway company and its servants or agents discover the danger in time to prevent the injury, it is held liable if such injury was caused by the ordinary negligence of such servants or agents. Railway v. Sympkins, 54 Texas, 615; Railway v. Weisen, 65 Texas, 443; Railway v. Smith, 62 Texas, 252; Railway v. Fain, 19 Am. and Eng. Ry. Cases, 102; Thomp. on Neg., 448; Shearm. & Redf. on Neg., sec. 25; Whart. on Neg., secs. 303, 397, 893, and notes; Railway v. Wren, 43 Ill.,

· 87; Railway v. Irish, 72 Ill., 404; Railway v. Ingraham, 58 Ill., 120; Railway v. Bray, 57 Ill., 514.

2. A railway company can be held liable for negligently killing even such an animal as a dog, and if the court below fairly submitted the question of negligence to the jury the verdict of the jury ought not to be disturbed. Railway v. Holden, 3 Ct. App. C. C., 323, and authorities cited.

HOBBY, JUDGE.—This suit was brought by appellee J. P. Hauks against the appellant in the Justice Court of Precinct No. 1 of Henderson County for the sum of $200 for the negligent and willful killing of his dog. Judgment was rendered by default in said court on October 31, 1887, against the appellant for the sum of $200. From this judgment the railway company appealed to the District Court of the county. Written pleadings were filed by the appellant, but they are not necessary to be set forth, as no question grows out of them. A trial was had in the District Court, and a verdict and judgment were rendered in favor of Hauks for "$100 damages for the negligent killing of his dog."

Appellee Hauks' testimony was in substance that on Sunday morning he, with two other parties and two dogs, walked down on the track of defendant about a half mile east of Athens; they walked down a path made on said railway by footmen. After they had turned around and were coming back they looked east and saw a freight train coming around the curve, and plaintiff picked up his small dog and carried him off the track, but the dog that got killed ran west across a bridge and he did not have time to get him off; threw some rocks at him. The dog had never seen a train before and stopped on the track a while to look at it, then, being afraid of it, ran. The train was thirty or forty yards from him when he started. He ran his best down the track ahead of the train about 300 or 400 yards, and the engine caught and killed him. The train seemed to be running at a fair speed until the dog ran in front of it. It then seemed to increase the speed, although it was up grade. The engineer was looking out at the dog all the time until it was killed. He did not try to stop or slow up the train, nor did he blow the whistle, ring the bell, or do anything to frighten the dog. The plaintiff testified that as the engineer passed him he was five or six feet of the train and heard him say, "We'll catch him" or "We'll get him," or something of that kind.

This testimony was substantially corroborated by other evidence.

There was testimony to the effect that the dog was a valuable shepherd dog, worth $200 or $300.

The engineer denied making the statement attributed to him by plaintiff.

The engineer in charge of the train testified he had a very long freight train that day from Tyler west. It was so heavy that he had to cut the train in two at a hill about three miles east of Athens and take one-half

into Athens and then go back and get the other half.    He had orders on leaving Tyler to meet No. 2, a passenger train on defendant's railway, at Athens at 10:20 a. m., and owing to the time he had lost in dividing train at the hill he was pressed for time in making the trip with the last half of the train.  It was on this trip that the dog was killed.  He saw just as he turned around a curve ahead of the train on the track some boys and some dogs.  The dog which was killed by the train got scared at the train and ran on ahead some 200 or 300 yards.  He opened steam cocks to scare the dog off, but just before they got to a road crossing they caught the dog in a stock gap.  Was traveling pretty fast before the dog was killed and could not have stopped the train in the distance the dog ran if he had tried, and besides was pressed for time, as they had lost so much by dividing the train.  "We had just one minute to spare when we got in the switch at Athens."  After reaching switch waited half hour for the passenger, which was behind time.

This evidence was corroborated substantially by that of the witness E. Nichols.

Under these facts the court charged the jury in effect that the plaintiff must show that the dog was killed by defendant's employes either willfully and intentionally or negligently; and further that the company was not required to fence the track or adopt other safeguards to keep dogs off the track.  The jury were told that the question for determination was whether defendant was liable because of the willful and intentional wrong or negligence of those operating its train.

The court defined negligence, and instructed the jury that the defendant would be liable if its employes willfully and intentionally increased the speed of the train and killed the dog; or if they failed to use the care persons of ordinary prudence would commonly use to prevent killing the dog under the same circumstances, etc., the defendant would be liable.

The jury were also told that the defendant "would not, because its employes saw the dog on the track, be required to stop the train, but to use such reasonable care as was before defined, and if the circumstances reasonably justified the belief that the dog could get out of the way the employes had the right to act on such assumption until it appeared the dog would be struck unless the train was stopped or slackened; and if it did not so appear in time to stop or slacken the train, defendant would not be liable.

"If, on the other hand, in the exercise of reasonable or ordinary care they would have discovered in time to prevent the collision that the dog would be struck if the train was not stopped or slackened, and if they failed to use proper care to stop the train or failed to use the proper care before defined to prevent the accident, and in consequence thereof the dog was killed, then defendant would be liable."

The latter portion of the charge is assailed by the following assignments:

"2. The court erred in submitting to the jury substantially that it is the duty of a railway company to stop its trains under all circumstances if necessary to prevent the killing of a dog, and this too regardless as to whether the dog is a trespasser, and regardless as to the duties and exigencies of the situation as to the movements of the train itself.

"3. The court erred in charging the jury that defendant was liable for negligence, meaning ordinary negligence, in the killing of the dog."

We do not think the charge is obnoxious to the criticism contained in the assignments when it is considered in connection with the paragraph preceding it relating to the same subject.

Concede that appellee was a trespasser and guilty of negligence in going upon the track with his dog, that fact would not relieve appellant of the exercise of ordinary prudence and care to prevent injury to the dog. Under such facts it would seem that upon the plainest principles of reason if appellant could have used the ordinary prudence or care defined by the court to have prevented the injury and did not so, and the failure to use it caused the damage, the appellee should recover.

The last assignment is that "The court erred in refusing a new trial, for the reason that the verdict of the jury was contrary to the law and the evidence, in that the evidence showed that the plaintiff and his dog were trespassers on defendant's track, without any business and at a place where they had no right to be, and for this reason, although defendant may have been negligent, still it would not have been liable except for an intentional or willful killing of said dog, and the verdict of the jury shows that their finding was based solely on the negligent killing of the dog, and that defendant did not willfully kill said dog."

Under the proof made by appellee in the case there might have been a recovery on the ground that appellant's employes willfully and intentionally killed the dog. No question is raised as to the sufficiency of the evidence to show that the engineer ought to have seen that the dog would not leave the track.

The negligence referred to in the verdict of the jury was that negligence defined by the court in its charge.

We think the judgment should be affirmed.

*Affirmed.*

Adopted October 28, 1890.