FURST–EDWARDS & CO. v. ST. LOUIS S. W. RY. CO.

(Court of Civil Appeals of Texas. Austin. Jan. 10, 1912. Dissenting Opinion, Jan. 17, 1912. On Motion for Rehearing, March 20, 1912. On Rehearing, May 1, 1912.)

1. APPEAL AND ERROR (§ 1071*) — HARMLESS ERROR—INCONSISTENT FINDINGS.

Special findings which are found to be immaterial upon construing all of the findings together should be disregarded, even if inconsistent with material findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

2. RAILROADS (§ 485*)—FIRES—INSTRUCTIONS —BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.

The court instructed that the burden of proof was on the owner of cotton destroyed on a compress platform by a fire to show that it was burned from fire emanating from defendant's railroad locomotives, and, if plaintiff showed that fact, the burden was on defendant to show that it used ordinary care to equip the engine with the latest and best spark arresters, and that it was in good repair, etc., and, if defendant showed those facts, "then the burden of proof upon all the other issues submitted to you is upon the plaintiff"; contributory negligence having been submitted among other issues. Held, that the charge was erroneous for placing the burden of proving the absence of contributory negligence on plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1747–1756; Dec. Dig. § 485.*]

3. NEGLIGENCE (§ 83*)—DISCOVERED PERIL.

The doctrine of discovered peril applies to the injury of inanimate, as well as of animate, objects.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**4. NEGLIGENCE (§ 83*)—CONTRIBUTORY NEGLIGENCE—"DISCOVERED PERIL."**

By the doctrine of discovered peril is meant that, where the danger of inflicting an injury is discovered by the person inflicting it in time to have prevented the injury by the exercise of proper care, he will be liable for injury proximately resulting from his negligence, though the injury would not have occurred but for the previous negligence of the person injured.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

**5. NEGLIGENCE (§ 83*)—DISCOVERED PERIL—APPLICATION TO PLAINTIFF.**

The principle of discovered peril applies to plaintiff as well as to defendant, so that, if plaintiff sees that he is exposed to danger by defendant's negligence, he must take the additional precautions of a person of ordinary prudence in view of the conditions as they actually are, and not as they should be except for defendant's negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

**6. NEGLIGENCE (§ 1*)—ELEMENTS OF LIABILITY—VIOLATION OF DUTY.**

The right to recover for injuries resulting from negligence is based upon the violation of a legal duty.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*]

**7 NEGLIGENCE (§ 83*) — DISCOVERED PERIL—FOUNDATION OF DOCTRINE.**

The doctrine of discovered peril is based on the idea that plaintiff's negligence is not the proximate cause of the accident rather than being an exception to the rule that contributory negligence bars a recovery.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

**8. RAILROADS (§ 466*) — FIRES — PROXIMATE CAUSE OF INJURY—DISCOVERED PERIL.**

If defendant railroad company discovered that there was imminent danger of firing plaintiff's cotton on a compress platform by switching in the manner it did, and that the danger could have been obviated by doing the switching in another feasible way, defendant's failure to exercise reasonable care to avoid firing the cotton was the proximate cause of the damage, though plaintiff was originally negligent in leaving the cotton on the platform.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1686; Dec. Dig. § 466.*]

**9. NEGLIGENCE (§ 83*)—DISCOVERED PERIL—CARE REQUIRED.**

Ordinary care under the particular circumstances is all that is required to avoid injury in absence of contractual relations, even after the danger of doing the injury is discovered by defendant, though what constitutes ordinary care would vary under the circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

*On Motion for Rehearing.*

**10. RAILROADS (§ 486*) — FIRES — SPECIAL FINDING—CONSTRUCTION.**

In an action against a railroad company for damage to cotton on a platform near the right of way from fire, the jury answered "Yes" to a special interrogatory as to whether the trainmen who did the switching could have done it without going on the switch near the platform as they did, and also answered "Yes" to an interrogatory whether they were negligent in using that switch, but answered "No" to an interrogatory whether such negligence, if any, was the proximate cause of the cotton being burned. *Held,* that the answer to the ninth interrogatory was a finding that the fire did not originate from sparks from the locomotive while it was on that particular switch.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1757; Dec. Dig. § 486.*]

**11. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—INSTRUCTIONS.**

Error in an action against a railroad company for damages for destroying cotton near the right of way by sparks from a locomotive in instructing that the burden was on plaintiff to negative contributory negligence was harmless, where the jury found that the fire was not caused by the negligence of defendant's trainmen in switching as claimed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

Key, C. J., dissenting in part.

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by Furst-Edwards & Co. against the St. Louis Southwestern Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed on rehearing.

Morrow & Smithdeal, for appellant. Scott & Ross, for appellee.

JENKINS, J. This suit was brought by appellants against appellee to collect about $10,000 alleged to be due on account of the burning of cotton belonging to appellants, situated on the compress platform at Hillsboro, Tex., on January 16, 1908. The facts will appear from the findings of the jury on special issues, and from the evidence hereinafter referred to in this opinion. The court submitted the case upon the following special issues, which were answered by the jury as herein indicated:

"(1) Was any cotton belonging to the plaintiff damaged or destroyed by fire on the compress platform at Hillsboro on or about the date alleged in the petition? A. Yes.

"(2) Did the fire in which said cotton was damaged and destroyed, if you have found there was a fire, originate from the defendant's engine? A. Yes.

"(3) Did the defendant company exercise ordinary care to equip its engine No. 192 with the most approved appliances in use for arresting sparks and preventing the escape of sparks from said engine? A. Yes.

"(4) Were the appliances, if any, in said engine, which were designed to arrest the escape of sparks of fire from said engine, in good repair at the time the cotton was burned, if you have found it was burned? A. Yes.

"(5) Had the defendant railway company exercised ordinary care as that term is hereinabove defined to you to have the appliances, if any, designed to arrest the escape of sparks and fire from said engine in good repair? A. Yes.

"(6) Did the agents and servants of the defendant company in charge of its engine No. 192 use ordinary care as that term has been defined to you herein in operating the

engine No. 192 to prevent the escape of fire therefrom? A. Yes.

"(7) If you believe from the evidence that the defendant company switched and propelled several cars attached to its engine No. 192 on its track and switches near the compress platform on the day of the fire, if there was a fire, and that the switching that was done, if any, on the compress switch, was done from the north end of said switch, then please say whether the servants and employés of the defendant who did the switching could have done the same without going in from the north end of said compress switch? A. Yes.

"(8) Were the employés of the defendant company who were in charge of engine No. 192, and who were doing the switching, guilty of negligence in doing the switching from the north end of said compress switch? A. Yes.

"(9) If the defendant company was negligent in doing said switching from the north end of said switch, then say whether said negligence, if any, was the proximate cause of the plaintiffs' cotton being burned if it was burned? A. No.

"(10) On what date did the fire occur, and what was the value of plaintiffs' cotton which was destroyed at that time? A. January 16, 1908; $10,105.61.

"(11) Were the plaintiffs guilty of contributory negligence in permitting their cotton on the platform where it was burned under the conditions surrounding it at the time? A. Yes.

"(12) Was plaintiffs' cotton in imminent danger of catching fire? If so, did defendant's employés in charge of its engine discover said danger before said cotton took fire? A. Yes.

"(13) If plaintiffs' cotton was in imminent danger, and if defendant's employés in charge of the engine discovered said danger before the fire, could they, by the exercise of ordinary care after discovering said danger, have prevented the fire? A. No.

"(14) If plaintiffs' cotton was in imminent danger before the fire, and if such danger was discovered by the defendant's employés in charge of its engine, then say: (a) Did said employés use ordinary care to prevent the fire, after discovering the danger? (b) If you find that they did not use such care, then was there a (their) failure to do so, if any, the proximate cause of the fire? A. Yes."

Upon the verdict as above indicated, the court rendered judgment for appellee.

[1] 1. Appellants assign error upon the finding of the jury as being inconsistent. We think that they are, but it does not necessarily follow that a case submitted on special issues should be reversed on account of inconsistent findings. If, looking to such findings as a whole, the court could say that some of them, in view of other findings, were immaterial, such immaterial findings should be disregarded.

[2] 2. On the issue of the burden of proof, the court charged the jury as follows: "The burden of proof is on the plaintiff to show that the cotton was burned from fire emanating from the defendant's engine. If the plaintiff has shown by a preponderance of the evidence that the fire which damaged or destroyed the cotton came from the defendant's engine, then the burden of proof is on the defendant to show that it used ordinary care to equip its engine with the latest and best appliances in use for the prevention of the escape of fire, and that such appliances were in good repair, and that the engine was properly handled, and if the defendant had shown by a preponderance of the evidence that it used ordinary care to equip its engines with the latest and best appliances in use to prevent the escape of fire, and that said appliances were in good repair, and properly handled, then the burden of proof upon all the other issues submitted to you is upon the plaintiffs." Error is assigned upon this charge, that it placed the burden of proving the absence of contributory negligence on the plaintiffs. We sustain this assignment. Contributory negligence was an issue in this case under the pleadings and the evidence. The jury found that appellants were guilty of contributory negligence. We cannot say under the evidence that contributory negligence was shown as a matter of law, nor can we say what would have been the verdict of the jury on this issue but for this erroneous instruction.

[3] 3. The court gave the following, among other, instructions to the jury: "If the plaintiffs' cotton was in imminent danger of catching fire, and defendant's employés in charge of the engine discovered said danger, it was the duty of such employés to avoid burning the cotton, if it could be done in the exercise of ordinary care, and a failure to use such care after a discovery of the danger would be negligence, and if such negligence, if any, was the proximate cause of the burning of the cotton, the defendant would be liable, although the plaintiffs were negligent in exposing the cotton to the danger." Both appellant and appellee contend that this paragraph of the charge is erroneous; the counter proposition of the appellee being that "the doctrine of discovered peril cannot be applied to inanimate property." We might content ourselves with saying that there was no error in this charge, such being the opinion of the majority of this court, but for the earnest insistence of the appellee that this point has never been decided, and that it is of great importance to the railroads of Texas that it be settled.

[4] 4. By the doctrine of discovered peril, as here used, is meant that where the danger of inflicting an injury is discovered by the party inflicting the same, in time to

have prevented such injury by the exercise of proper care subsequent to such discovery, and injury occurs as the proximate result of subsequent negligence, the party inflicting such injury will be liable therefor, notwithstanding the previous negligence of the party injured, and but for which the injury would not have occurred.

5. This principle of law is well settled in personal injury cases. Railway Co. v. Breadow, 90 Tex. 30, 36 S. W. 410; Railway Co. v. Staggs, 90 Tex. 460, 39 S. W. 296; Railway Co. v. Wallace, 21 Tex. Civ. App. 396, 53 S. W. 78; Railway Co. v. Smith, 52 Tex. 184; Railway Co. v. Lankford, 9 Tex. Civ. App. 596, 29 S. W. 935; Railway Co. v. Robinson, 4 Tex. Civ. App. 125, 23 S. W. 433.

6. In no class of cases has the principle involved in the doctrine of discovered peril or danger been more frequently applied than in suits for damage to live stock. Railway Co. v. Hauks, 78 Tex. 303, 14 S. W. 691, 11 L. R. A. 383; Railway Co. v. Cocke, 64 Tex. 158; Davies v. Man, 10 Meeson & Wesley, 545; Kerwhaker v. Railroad Co., 3 Ohio St. 172, 62 Am. Dec. 246; Isbell v. Railroad Co., 27 Conn. 393, 71 Am. Dec. 78; Reeves v. Railway Co., 30 Pa. 461, 72 Am. Dec. 713; Lapine v. Railway Co., 20 La. Ann. 158; Railway Co. v. Mullins, 66 Ill. 526; Railroad Co. v. Barrie, 55 Ill. 229; Railway Co. v. Linn, 67 Ill. 109; Jones v. Railroad Co., 70 N. C. 627.

7. It may be true that no court has ever held in hæc verba that the doctrine of discovered peril applies to injuries to inanimate property, but, if so, it is perhaps because its application in such cases has never before been directly challenged. We know of no case holding to the contrary. Shearman & Redfield, in their excellent work on the Law of Negligence, say: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to risk of injury, if such injury was more immediately caused by defendant's omission, after becoming aware of plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him." Section 99 (5th Ed.). In announcing this rule they make no distinction between injuries to persons and injuries to property. On the contrary, they say this principle was first enunciated in Davies v. Man, supra, which was a suit for damages for killing an ass, which had been hoppled and turned upon the highway, and was run over and killed by a party driving a team and wagon. They further say: "This principle has been accepted in this form by every court in England, including the House of Lords, by the United States Supreme Court, and by every court in the Union, with the possible exception of Pennsylvania." In the review of the case of Davies v. Man, supra, in the exchequer, Lord Abinger said:

"Even if the ass was a trespasser and the defendant might by proper care have avoided injuring the animal, and did not, he is liable for the consequences of his negligence." The courts of this state have recognized the rule applied to personal injury cases as also applicable to the destruction of inanimate property. Morgan v. Railway Co., 50 Tex. Civ. App. 420, 110 S. W. 986, 987; Edwards v. Campbell, 12 Tex. Civ. App. 236, 33 S. W. 764; Martin v. Railway Co., 87 Tex. 123, 26 S. W. 1052; Railway Co. v. Rippetoe, 64 S. W. 1017.

Each of the foregoing cases, except the Rippetoe Case, was, like the instant case, a suit to recover damages by reason of the destruction of cotton on compress platforms set on fire by sparks from a locomotive. In the Martin Case, our Supreme Court, speaking through Chief Justice Stayton, said: "There is, however, a class of cases in which, although one person has been negligent, it becomes the duty of another to avoid inflicting injury upon him after discovering his danger, if this can be done by the exercise of such care as is then practicable, and a failure in such cases will fix liability." In the Edwards-Campbell Case, this court, speaking through Chief Justice Fisher, said: "We understand the law upon this subject to be that, if the plaintiff is guilty of negligence in placing himself or property in a position of danger, he is barred of recovery, unless it is shown that the injury was inflicted under circumstances which show that the defendant discovered the peril or danger, * * * and that in the exercise of ordinary diligence, under the circumstances, with means at his control, he could have prevented the catastrophe." In the Morgan Case, Mr. Justice McMeans, speaking for the court, said: "If the engineer knew of the situation of said cotton and the peril to which it was exposed by the manner in which the engine was being operated, and if it was practicable for him to do the work in which he was engaged in some other manner, by which the damage by setting fire to the cotton would be obviated or lessened, and, notwithstanding said knowledge, he continued to operate in the same dangerous manner, and that, as a proximate consequence thereof, the cotton was destroyed by fire from the engine, the railway company would be liable, notwithstanding appellant's contributory negligence." We indorse the excerpts from these opinions above set out as sound statements of the law. The Rippetoe Case was a suit to recover damages for injuries to a wagon and team, inflicted by a railroad company. Mr. Justice Pleasants, speaking for the court, said: That the defendant "could only be held liable for failure to use ordinary care to prevent the injury after it had actually discovered the danger."

[5] 8. The principle which controls when the danger is discovered applies to the plain-

tiff as well as the defendant. If the plaintiff sees that he is exposed to danger by reason of the negligence of the defendant, he must take all additional precautions that a person of ordinary prudence would use, in view of the circumstances as they are, and not as they ought to be, but for the negligence of the defendant. Sher. & R. on Neg. §§ 92, 101; Walker v. Herron, 22 Tex. 56.

9. In Isbell v. Railroad Co., 27 Conn. 405, 71 Am. Dec. 78, which was a suit for damages on account of injury to cattle, the court, after stating the doctrine as to injury to persons, says: "These are instances, I am aware, of personal rights, but what is true in relation to the person is essentially true in relation to dumb animals and other kinds of property." How can there be any difference in principle? Appellee asserts that the doctrine of discovered peril, as applied to injuries to persons, is based upon principles of humanity, and refers in support of this contention to Railway Co. v. Breadow, and Railway Co. v. Staggs, supra. It is true such language was used in these cases, but upon what are based the principles of humanity there invoked? Upon the moral law which found its most perfect expression in the Golden Rule. Duty is the basis upon which the whole law of negligence rests. Our duty in specific instances is written in our statute books, but before human statutes were written, before the law was given at Sinai, the law of God had written upon the hearts of all men the injunction not to harm his fellow man. Puffendorf says: "In the series of absolute duties, or such as bind all men, antecedently to any human institution, this seems with justice to challenge the first and noblest place, that no man hurt another, and, in case of any hurt or damage done by him, he fail not to make reparation;" and he adds that this applies to such neglect as might easily have been avoided. Human laws, as a general rule, do not attempt to enforce the positive moral obligation that we should do good, but they do undertake to restrain us from doing harm.

[6] That the right of recovery for injuries resulting from negligence is based upon the violation of duty is no invention of the writer. It is so announced in every text-book upon the law of negligence, and is found by direct announcement or by necessary implication in every well-considered case on this subject. The ancient maxim of the law, "Sic utere tuo ut alienum non lædas," indicates to what extent the Golden Rule is also the rule of law in cases of damage by negligence. The inquiry in each case of alleged damages is, What was the legal duty of the defendant under the circumstances of the case? In Breadow's Case, supra, speaking of the discovered peril, the court said: "Such knowledge imposed upon it (the railway company) the new duty," etc. What "new duty"? Not of using proper means to avoid

taking the life or mangling the body of Breadow. That duty previously existed as to him and all other persons. But the "new duty" was to do those precautionary acts which would not have been incumbent upon it but for the discovery of such peril; that is to say, to use all practical means to stop the engine then and there. It is true that the duty to avoid taking human life would require greater effort than to avoid destroying property, and so to avoid destroying a large amount of property would require greater precaution than if the amount was small; but in each case the effort required would depend upon the circumstances of the case, and the fact that the danger was discovered, or was known to the defendant, before the injury was inflicted, would be a potent circumstance to be considered in any case, and should be taken into consideration in determining the liability or nonliability of the defendant.

[7] 10. It is frequently stated that liability of the defendant for negligence after the discovery of the danger, whereby injury is inflicted, the plaintiff also having previously been guilty of negligence, but for which the injury would not have occurred, is an exception to the rule that the plaintiff cannot recover if he has been guilty of contributory negligence. For practical purposes, upon whatever grounds it is rested, perhaps this is as good a reason as any other; but to us it seems rather to be the enforcement of the rule that he whose act is the proximate cause of the injury shall be held responsible.

[8] Much confusion exists as to what is proximate cause, and it must be admitted that in many cases it is exceedingly difficult to draw the line between cause and condition. We will not here attempt a discussion of this subject, but we hold that if the appellee discovered the fact (if such was the fact) that there was imminent danger of setting fire to the appellants' cotton by doing its switching in the manner the same was done, and that the same could have been done in another manner which would not have interfered with the appellee's business, and that by so doing the danger would have been avoided, its failure to exercise such reasonable care to avoid the injury was the proximate cause of the destruction of the cotton. In such case, the previous act of appellants in placing their cotton on the platform, when the dangerous condition arising from a strong northwest wind, if such was the fact, did not exist, though, perhaps, it should have been anticipated, was not a concurring cause of the fire in a proper legal sense. The intentional acts of the party, done after the discovery of the danger, if they amount to negligence under the circumstances of the case, and are the immediate cause of the injury, breaks the causal connection between the previous negligence of the injured party and the injury inflicted. Sher. & R. on Neg.

(5th Ed.) §§ 26, 99; McDonald v. Railway Co., 86 Tex. 13, 22 S. W. 939, 40 Am. St. Rep. 803; Isbell v. Railway Co., supra; Kerwhaker v. Railway Co., supra.

[9] 11. Appellants insist that under the fact of the discovered danger it was error to charge that appellee was bound to exercise only reasonable care to avoid the injury. As we understand the law, reasonable, or, as it is often termed, ordinary, care to avoid injury, is all that is required of any one in the absence of contractual relations. What acts amount to such care depend upon the seriousness of the probable injury and the imminence of the danger; or, as is usually said, the circumstances of the particular case. Railway Co. v. Hodges, 102 Tex. 525, 120 S. W. 848. The railroad company was transacting a lawful business, which it not only had the right to pursue for its own profit, but which it was compelled to pursue in the discharge of a duty which it owed to the public. Had a human life been in imminent peril, the higher duty which it owed to avoid destroying the life of a human being would have superseded its duty to its stockholders to earn dividends, and to the public to promptly transport freight tendered it; and would have demanded, if reasonably necessary, the total, temporary cessation of its business at that point, and in doing so it would have done only what a reasonably prudent man would be expected to do under like circumstances; while reasonable care to avoid injuring the property of one who had voluntarily exposed the same to at least some degree of danger would have demanded no such action on the part of appellee, even though it had discovered such danger. But such circumstance would demand ordinary care on the part of appellee to avoid such discovered danger, and what would amount to ordinary care would be influenced by the fact of such discovery.

For the error in the charge of the court as to the burden of proof, pointed out in subdivision No. 2 of this opinion, this case is reversed and remanded.

Reversed and remanded.

KEY, C. J. (dissenting). The writer concurs in the reversal of this case, because the charge of the court put the burden of proof on the plaintiffs on the issue of contributory negligence. While there was testimony tending to prove contributory negligence, neither the plaintiff's petition nor the testimony showed, as matter of law, that they were guilty of such negligence, and therefore that issue was a question of fact to be passed upon by the jury, and the burden of proof rested upon the defendant in that regard. Railway Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538. But I do not assent to all that is said in the majority opinion on the subject of discovered peril, and believe that the court erred in giving the instruction upon that subject set out in the majority opinion. In the entire domain of law it is doubted if any other subject has been the occasion of as much confusion, uncertainty, and conflict of decision as the subject of contributory negligence. Mr. Beach in his work on that subject says that Davies v. Man, referred to in the majority opinion, is, to a large extent, responsible for the condition referred to. Space will not permit a reproduction of his entire criticism of that case, but it concludes as follows: "To this extent there is no objection to the doctrine in Davies v. Man. So far as it teaches the principle that remote causes are not to be regarded, that only when the plaintiff's negligence is a proximate cause will it bar his action, and that contributory negligence is no defense to an action for willful negligence, it is a sound authority. But it does not end there. It is equally an authority for the doctrine of comparative negligence, short of which there is no place to stop if we frankly accept the rule to its full extent. In the earlier cases in Illinois and other states where the doctrine of comparative negligence obtains there is no trace of that doctrine, and it seems clear that it originated in an attempt to adopt and apply the rule in Davies v. Man. In those jurisdictions, where comparative negligence is not the rule, the influence of this case has been to confuse the law and undermine the sound principles upon which it should be based. Its apparent resemblance to the two sound principles which have been referred to, and the rather ingenious, but really clumsy, way in which the fallacy is concealed, have enabled it to pass current; but, until the falseness of its reasoning and statement are recognized and its authority is distinctly repudiated, the doctrine of contributory negligence is in peril." In another place the author states that the decision rendered in Davies v. Man cannot be sustained in reason upon any other theory than the doctrine of comparative negligence, which doctrine obtains in only a few of the American states, and has been expressly repudiated in this state in McDonald v. I. & G. N. R. R. Co., 86 Tex. 1, 22 S. W. 939, 40 Am. St. Rep. 803, in which it was held that, although the defendant may have been guilty of gross negligence, ordinary negligence on the part of McDonald, if it was a proximate cause of his injury, would defeat any right of recovery.

It has long been well settled that the doctrine of contributory negligence is a part of the common law, and the authorities, with a few exceptions, agree that when the injured party has himself been guilty of negligence, which was a proximate cause of the injury, he cannot as a general rule recover of the negligent defendant compensation for such injury. Difference of opinion may exist as to the reason upon which that doctrine is founded, but the doctrine itself is well settled. In the McDonald Case, just referred

to, it is in effect held that it rests upon the proposition that the law will not permit a party to recover from another what would constitute compensation for his own negligent misconduct, and many authorities rest it upon the same ground of public policy.

The Supreme Court of this state, as well as some other courts, has allowed one exception to the rule referred to, and that exception, and the reason upon which it is founded, is well and clearly stated by Mr. Justice Denman in T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410. Breadow, while walking on a railroad track, was struck and injured by a moving engine; and, in dealing with the question referred to, Judge Denman said: "If defendant, through the parties in charge of the engine, knew of Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. This new duty and liability for its breach is imposed, upon principles of humanity and public policy, to prevent what would otherwise be, so far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril. The same principle of law which on grounds of public policy will not permit a person to recover when his own negligence has proximately contributed to the injury will not permit the party who has inflicted the injury in violation of such new duty to defend upon the ground of such negligence." It will be noted that the court held that in the class of cases referred to the defense of contributory negligence will not be allowed for reasons of public policy founded upon principles of humanity for the protection of human life and to prevent injury to persons negligently exposing themselves to peril. It is well settled that, in order to constitute contributory negligence which will prevent a recovery, such negligence must have been a proximate cause of the injury; but it will be noted that in the Breadow Case the court does not rest its holding upon the proposition that, in the circumstances referred to, Breadow's negligence would not be a proximate cause of his injury. The sole and only reason there assigned for the doctrine is public policy, for the prevention of physical injury to human beings and if that be true, and the doctrine of discovered peril rests upon that reason alone, then it cannot apply when no personal injury has been inflicted, and the plaintiff seeks to recover for injury done to inanimate property only. However, in my opinion, the question referred to has already been decided by the Supreme Court in so far as this class of cases is concerned in Martin, Wise & Fitzhugh v. Ry. Co., 87 Tex. 117, 26 S. W. 1052. In that case the plain-

tiffs sued to recover upon facts quite similar to those involved in this case. There, as in this, the defendant charged that the plaintiffs were guilty of contributory negligence in placing their cotton near the railroad track and failing to cover or otherwise protect it from sparks emitted from passing engines, and the trial court instructed the jury upon that subject as follows: "If you believe from the evidence that the plaintiffs or their agents or employés placed plaintiffs' cotton where it was burned, and if plaintiffs or those persons who had charge of the cotton for them at the compress did not cover or otherwise protect such cotton from sparks emitted from passing engines, and if you find that the placing of such cotton at the place where it was burned, and so leaving it there uncovered, was such an act of omission as a person of ordinary prudence would not have done in view of the probable damages of fire from passing engines, if such damage was probable, and if you further find from the evidence that such placing of the cotton there and leaving it uncovered was a proximate cause, which, concurring with the negligence of the defendant, if you find the defendant was negligent, produced the fire which damaged the cotton, then the plaintiffs cannot recover, no difference how negligent in the matter you may find the defendant to have been." Error was assigned upon that charge, and the Court of Civil Appeals certified to the Supreme Court these questions concerning it: "Is this charge a proper presentation of the law of the case? Was such charge on the weight of the evidence? Was it proper in such charge upon contributory negligence in such a case to direct the jury, under the state of facts given, 'then the plaintiffs cannot recover, no difference how negligent in the matter you may find the defendant to have been'? Is it proper in this class of cases where a recovery is sought on the ground of negligence, and contributory negligence is alleged as a defense, to apply the rule that contributory negligence by the plaintiff will be an absolute defense, no matter how negligent in the matter the defendant may have been. If the railway company knew of the situation of the cotton, and by the exercise of ordinary care could have avoided setting fire to it and destroying it, would the fact that it was negligence on the part of the compress company to place the cotton in that position, uncovered, permit a recovery against the railway company?" And, in deciding those questions, the Supreme Court, speaking through Chief Justice Stayton, said: "The jury had been clearly instructed as to the degree of care necessary to be used by the respective parties, and as to the effect of contributory negligence on the right of plaintiffs to recover, and in view of the relation of the compress company to the cotton and to the plaintiffs, the negligence of that company is to be imputed to plaintiffs. Duggins v. Watson, 15

Ark. 126 [60 Am. Dec. 560]; Simpson v. Hand, 6 Whart. [Pa.] 321 [36 Am. Dec. 231]; Broadwell v. Swigert, 7 B. Mon. [Ky.] 39 [45 Am. Dec. 47]; Ins. Co. v. Austin, 69 N. Y. 482 [25 Am. Rep. 221]; Railway Co. v. Goddard, 25 Ind. 197; Puterbaugh v. Reasor, 9 Ohio St. 487. To hold that the knowledge of the railway company of the situation of the cotton would fix liability on it, if its employés failed to use ordinary care for its protection, although the compress company, the representative of plaintiffs, knew the same fact, and also failed to use ordinary care in view of the surroundings, would be, in effect, to hold that the railway company was under obligation to use greater care for protection of the cotton against fire than were its owners. Such is not the law. The compress company probably thought the cotton safe at such a distance from the railway, even though uncovered; and, if the railway company knew that such was its condition, might it not rely upon the judgment of those to whose care plaintiffs had intrusted it? If the railway company should have apprehended danger, and therefore have used greater care, what was the duty of the plaintiffs under the circumstances? There is, however, a class of cases in which, although one person has been negligent, it becomes the duty of another to avoid inflicting injury upon him, after discovering his danger, if this can be done by the exercise of such care as is then practicable, and failure in such cases will fix liability. This class of cases embraces those in which exposure to danger is known and imminent. Such cases have been often considered by this court. Railway v. Sympkins, 54 Tex. 615 [38 Am. Rep. 632]; Railway v. Richards, 59 Tex. 377; Railway v. Evans, 71 Tex. 369 [9 S. W. 325, 1 L. R. A. 476]; Railway v. Weisen, 65 Tex. 447; Artusy v. Railway, 73 Tex. 195 [11 S. W. 177]; McDonald v. Railway [86 Tex. 1] 22 S. W. 944 [40 Am. St. Rep. 803]. The facts on which the questions certified are predicated do not, however, bring this case within that class of cases, and the ordinary rule in reference to the effect of contributory negligence must be applied. Had the facts brought the case within the class before referred to, then so much of the charge as instructed the jury that plaintiffs could not recover if their negligence was a proximate cause of the injury, 'no difference how negligent in the matter you may find the defendant to have been,' would have been misleading; but, under the facts, the rule of law by which the jury should have been governed was in this respect correctly stated. It is not perceived that the charge was upon the weight of evidence, or that it was subject to any of the objections suggested in the question certified."

In that case the court certainly undertook to lay down the rule of law which should govern in cases of this class when a defendant has discovered the danger to which the plaintiff's property is exposed, because the court was specifically requested to decide whether it was proper in such a case to instruct the jury that contributory negligence' by the plaintiff would be an absolute defense, no matter how negligent the defendant. may have been, and that was followed up with the question asking the court to declare what would be the rule if the defendant knew of the situation of the cotton, and, by the exercise of ordinary care, could have avoided setting it on fire and destroying it; and the court said: "To hold that the knowledge of the railway company of the situation of the cotton would fix liability on it, if its employés failed to use ordinary care for its protection, although the compress company, the representative of the plaintiffs, knew the same fact, and also failed to use ordinary care in view of the surroundings, would be, in effect, to hold that the railway company was under obligation to use greater care for protection of the cotton against fire than were its owners. Such is not the law." The court, then, after some further discussion of the question, states that there is a class of cases in which, although one person has been negligent, it becomes the duty of another to avoid inflicting injury upon him after discovering his danger, if this can be done by the exercise of such care as is then practicable, and failure in such cases will fix liability; and it is stated that the class of cases referred to embraces those in which exposure to danger is known and imminent, and as illustrating that doctrine six cases are cited, in all of which recovery was sought for personal injuries. But, if the doctrine of discovered peril should be extended so as to include inanimate property, I do not believe the facts of this case disclose such known and imminent peril as would render that doctrine applicable. In most of the cases in which that doctrine has been announced, the injured party was upon the railroad track, and was injured by being struck by a passing engine. When a person is so situated, and it becomes apparent or reasonably probable to those who are operating the engine that he will not get off the track, then the danger becomes known and imminent, because it is absolutely certain that, if he remains on the track and the engine strikes him, he will be seriously injured. But there is no such certainty that an engine running past a nearby platform upon which baled cotton is stored will set fire to the cotton, although sparks may escape from the engine; that result may or may not happen.

As to the question of proximate cause, the court instructed the jury, in effect, that, in order for the plaintiffs' negligence to bar a recovery, it must have been a proximate cause of the injury, and thereafter the court gave the charge set out in the majority opin-

ion, telling the jury, in effect, that the plaintiffs' contributory negligence would not prevent their recovery if the cotton was in imminent danger and the defendant's employés in charge of the engine discovered the danger, and could, by the exercise of ordinary care, have avoided the injury. According to the language used in that charge, it is fair to assume that the jury reached the conclusion that although the plaintiffs may have been guilty of negligence in permitting their cotton to remain exposed and unprotected upon the platform, and although such negligence may have been a proximate cause of the injury, still they could recover if the defendant's employés, knowing the situation of the cotton and the other surrounding circumstances, could have prevented the injury by the exercise of ordinary care. If the plaintiffs were guilty of negligence in permitting their cotton to remain upon the platform near the railroad track, with the lint exposed, and without covering it or otherwise attempting to protect it from sparks which might be emitted by passing engines, then, while such negligent conduct on their part was an omission, still, it was continued up to and existed at the very time the cotton caught fire, and there are numerous authorities that hold that such a negligent omission constitutes a proximate cause. The plaintiffs alleged in their petition that the platform upon which the cotton was located was in 2 or 3 feet of a switch track belonging to the defendant, and that 20 feet west of that track was the defendant's main track, and that defendant was guilty of negligence on the occasion in question on account of the fact that it negligently ran an engine upon the tracks referred to, and negligently permitted sparks of fire to escape therefrom.

The proof shows, and it is perhaps a matter of common knowledge, that a locomotive engine cannot be run by steam generated by coal without some sparks of fire escaping therefrom. Unless there is a draft, the coal will not burn, and, when there is a draft, it will carry sparks out with it. The spark arresters which are used upon all properly equipped engines are so constructed as to prevent the escape of large, but they do not prevent the escape of all, sparks; and therefore, no matter how carefully an engine is handled, some fire will at times escape therefrom. It is also a matter of common knowledge that lint cotton is very combustible; and whether or not plaintiffs were guilty of contributory negligence in leaving their cotton exposed upon the platform nearby railroad tracks upon which they should have anticipated that engines would be run, and whether or not such negligence was a proximate cause of the cotton's being destroyed by the fire which escaped from an engine, are questions of fact which should be submitted to and determined by the jury. Such, in effect, was the ruling of the Supreme Court in T. & P. Ry. Co. v. Levi Bro., 59

Tex. 674, and Martin, Wise & Fitzhugh v. Ry. Co., supra.

It is important to keep in mind the distinction between willful and negligent conduct. When an act is willfully done for the purpose of injuring another, the latter's negligence, although it be a proximate cause of the injury, is no defense; but if the defendant's wrongful conduct is not willful—that is to say, is not committed for the purpose of injuring the other party—but is an act of negligence only, then, as a general rule, contributory negligence is a defense; and it is clear that this case belongs to the latter class. The majority opinion seems to stress the fact that the law of negligence is founded upon the nonperformance of a duty, and it seems to be argued that, because it was held in the Breadow Case that the discovery of the impending danger placed upon the defendant a new duty, therefore contributory negligence was not a defense. In reply to that argument is is proper to say that contributory negligence is also founded upon the failure of the injured party to perform a duty he owes to himself, and the law does not deny him the right to recover upon the ground that because of his negligence the other party was not in fault. Conceding the existence of the other party's failure to perform a duty to him, the law refuses to afford redress to the injured party when he is also guilty of negligence which co-operated in causing the injury, because to do so would be permitting him to recover for an injury caused, in part, by his own wrong. While it may have been once supposed that the Breadow Case, and others of the same class, established the proposition of law that a defendant's knowledge of the fact that the injured party was in imminent peril would require such person to exercise more than ordinary care to prevent the threatened injury, that belief was dispelled by S. A. & A. P. Ry. Co. v. Hodges, 102 Tex. 524, 120 S. W. 848, where it was held that the degree of care required of those operating engines and discovering a person in peril in its path is that of ordinary care, or such care as persons of ordinary prudence would use under similar circumstances. It was said in that case that a knowledge of such imminent peril would require the exercise of a great amount of care and diligence to avert injury, because it is obvious that under such circumstances a person or ordinary prudence would exercise such amount of care and diligence in order to prevent injury to the party in peril. But it was there distinctly held that the fact of discovered peril did not change the rule of law in that respect.

It also seems to be held in the majority opinion that knowledge of the danger would have the effect of rendering the plaintiff's negligence the remote, and the defendant's negligence the proximate, cause of the injury. The same thing has been said by other courts

in other cases; but the writer fails to see what bearing the knowledge of either or both parties could have in determining the question of proximate cause. A proximate cause is any act or omission which contributes directly to the injury complained of, and but for which such injury would not have occurred. A hunter may shoot at and kill another person, supposing him to be an animal, and yet his act in shooting him is just as much the proximate cause of the other's death as it would have been if the hunter had known that it was a man, and had shot at him for the express purpose of killing him. Hence is seems to me to be illogical and unsound in reason to suppose that what a party may know can have any bearing in determining whether or not a particular act or omission of his was a proximate cause of a given result. Knowledge, or the lack of knowledge, of facts, may be important in determining whether or not a person has exercised due care; but it is difficult to see how it can aid in determining what was the proximate cause of a given result.

### On Motion for Rehearing.

JENKINS, J. Upon a former day of the present term of this court we reversed and remanded this case for the reason that the charge of the trial court put the burden of proving the want of contributory negligence on the plaintiff. As we understood the facts from the brief of counsel, this was material error. The following statement was made in appellant's brief: "It was further shown that at the time of the fire that some few minutes before the fire broke out an engine of the appellee was standing on the compress spur track, switching from the north end of the compress spur track, and passed by the cotton several times immediately preceding the fire." The reference in support of this was "S. F. p. ———." Though no page was given in support of the correctness of the statement, we assumed that it was correct, inasmuch as no statement of an alleged evidence to the contrary was referred to in appellee's brief.

Upon motion for rehearing, we have examined the entire statement of facts of 120 pages, and find that there is very little therein to indicate just what was being done by appellee's servants at the time of an immediately preceding the discovery of the fire. The only evidence upon this point which we have been able to find in the record is that of the fireman Baldridge, who says: "I was on the engine when I first discovered the fire. The engine was on the main line when I first discovered the fire, near about even with the compress platform"—and that of the witness Fox, who said: "As soon as the alarm was sent in, I ran up to the platform. * * * I noticed the engine when I got on the platform. It was standing on the main line, as well as I remember, just about even with the northwest corner of the compress platform."

[10] Now it will be seen by reference to the findings of fact that the jury upon every issue of negligence, save one, found in favor of the defendant, and that was that defendant was negligent in switching from the north end of the compress switch. See special findings 7 and 8 set out in findings of fact herein. But the jury also found in answer to special issue No. 9 that said negligence was not the cause of plaintiff's cotton being burned. Upon the theory that the cotton was fired by sparks from the engine while it was on said compress switch spur, this finding would be inconsistent with the findings in response to issues 7 and 8. But, if said fire did not originate from sparks thrown by said engine while on said compress switch, then said findings are not inconsistent.

We construe the finding of the jury on the ninth special issue to be that the fire did not originate from sparks thrown while the engine was on the compress switch, and the evidence is sufficient to sustain this finding.

[11] Such being the case, the charge of the court as to the burden of proof on the issue of contributory negligence was harmless error. If the fire did not originate from the negligence of the appellee, the appellant was not entitled to recover, and contributory negligence becomes a mere academic question, which can in no wise influence the judgment that should be rendered on the facts found. The most that can be said by appellant is that under a proper charge as to the burden of proof the jury might have found that they were not guilty of contributory negligence. But, if such be conceded to be the fact, still the appellee cannot be held liable if it was guilty of no negligence in causing the fire. That it was guilty of negligence which might have caused the destruction of the cotton, but in fact did not, is immaterial.

In view of the matters above stated, the issue of discovered peril is eliminated from this case, but the majority of this court take this occasion to say that, notwithstanding the able dissenting opinion of the Chief Justice of this court, they adhere to the views expressed in their opinion herein, and, should occasion hereafter arise, they stand prepared to give additional reasons and cite additional authorities in support of their views.

For the reasons herein stated, the motion for a rehearing is granted, the judgment hereinbefore rendered by this court reversing and remanding this cause is set aside, and the judgment of the trial court herein is affirmed.

### On Rehearing.

In overruling the motion for a rehearing in this case, we deem it due attorneys for

appellants to say that they were not at fault as to the condition of their brief criticised in the opinion herein. It appears that they filed copies of their brief in this court and in the trial court; that thereafter the record was withdrawn; and that, when the same was returned, three incomplete copies of their brief were inadvertently returned with it, and that the same were the ones in our hands when we had this case under consideration.